Filed 1/28/21  Jennifer W. v. Superior Court CA4/3
Opinion on rehearing

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| JENNIFER W., | |
| Petitioner, | G059416 |
| v. | (Super. Ct. No. 18DP1139) |
| THE SUPERIOR COURT OF ORANGE COUNTY, | O P I N I O N |
| Respondent; | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY et al., | |
| Real Parties in Interest. | |

Original proceedings; petition for a writ of mandate to challenge an order of the Superior Court of Orange County, Dennis J. Keough, Judge.  Petition denied.

Martin Schwarz, Interim Public Defender, Seth Bank and Brian Okamoto, Deputy Public Defenders, for the Petitioner, J.W.

No appearance for Respondent.

Leon J. Page, County Counsel, Karen L. Christensen and Deborah B. Morse, Deputy County Counsel, for Real Party in Interest.

Christopher Mastick for Real Party in Interest Minor, M.C.

\*          \*          \*

Jennifer W. (Mother) petitions for a writ of mandate to overturn the juvenile court's order denying reunification with her daughter, M.C., terminating family reunification services, and setting a hearing to select a permanent plan for the child. (Welf. & Inst. Code, § 366.22; all further undesignated statutory references are to the Welfare and Institutions Code.)  Mother challenges the sufficiency of the evidence to support the court's order, arguing "the [] court erred when it found that reunifying [M.C.] would create a substantial risk of detriment to [M.C's] safety, protection, physical or emotional well-being."  Mother asserts her "substance use and denials, although undeniably relevant and concerning, are not substantial evidence of risk of detriment when considered in the context of [the] entire case."  After examining the record, we conclude substantial evidence supports the court's ruling there was a substantial risk of detriment to the child's safety if returned to Mother.  Accordingly, we deny Mother's writ petition.

I

FACTS AND PROCEDURAL HISTORY

In October 2018, M.C. was born with amphetamine and methamphetamine in her blood system and taken into protective custody by the Orange County Social Services Agency (SSA).  Mother admitted she "tried" methamphetamine "one-time" before knowing she was pregnant but otherwise denied using methamphetamine.  She also provided various inconsistent explanations for the drugs in the child's body.  Nine months earlier, the juvenile court detained Mother's two other children with the same father after they were found unsupervised with open wounds, severe rashes, and an infection caused by leaving the children in urine-soaked diapers.

2

SSA filed a juvenile dependency petition based on M.C.'s positive test for methamphetamine at birth. The petition also alleged both Mother and the father had unresolved substance abuse and domestic violence issues, as well as criminal histories, and had a pending dependency case for M.C.'s other siblings. Mother and the father did not contest the allegations and the juvenile court found them to be true. In its dispositional order, the court continued SSA's custody of M.C. and authorized family reunification services for both Mother and the father.

SSA and Mother stipulated to a case plan that the juvenile court incorporated into its dispositional order. The plan stipulated Mother would have supervised visitation with the child, up to seven hours per week, and SSA had the option to liberalize visitation. Mother agreed to participate in programs on parenting education, general counseling, anger management, and substance abuse. The plan also directed Mother to participate in a "12-Step Program" for substance abuse and submit to random testing. Mother agreed to be tested through a drug patch. Under the case plan, Mother knew "all drug [and] alcohol tests [were] to be negative" and a missed drug test would be considered a positive drug test. The court advised Mother that if she "fail[ed] to comply with the requirements of [her] reunification case plan, the court [could] terminate reunification services and set a hearing to determine a more permanent plan for [her] child," which included possibly terminating Mother's parental rights and ordering adoption of the child.[1]

Over the next 21 months, Mother maintained employment and consistently kept her supervised visits with M.C. Mother was both attentive and affectionate during these visits. Mother also participated in numerous services and completed programs in parenting education, general counseling, and anger management.

---

[1] We do not discuss the father's involvement in this case because the court later terminated his access to family reunification services and he is not a party to this writ petition.

On her substance abuse issue, Mother reported completing her 12-Step Program and a substance abuse program. In 2019, Mother shared with her assigned SSA senior social worker, Emmanuel Rodriguez, insight gained through her participation in services, acknowledging she had placed substance use ahead of her children's well-being. Notwithstanding, Mother regularly tested positive for drug use in both 2019 and 2020. For example, in the three months following completion of her substance abuse program in August 2019, Mother tested positive for methamphetamine four times, cocaine three times, and once claimed her testing patch fell off the day before she showed up to submit it. Mother maintained she was not using illegal substances.

Including the above results, the record shows between April 2019 and July 2020, Mother's drug patch testing returned positive results 19 times (13 of these for methamphetamine) and negative 30 times. Additionally, there was one instance where Mother's patch was reported untestable because it had been compromised and four other instances when Mother did not show up or claimed her testing patch had fallen off. Mother's visits with her children were scheduled to become unsupervised in May 2019, but remained supervised due to her positive drug test results. The last negative drug patch test occurred in February 2020, followed by eight positive results for methamphetamine and two failures to submit patches for testing.

Over several days beginning at the end of August 2020, the juvenile court combined the 12-month status review with the 18-month status review hearing. The court received into evidence SSA's status review reports and heard testimony from Mother and social worker Rodriguez.

Rodriguez testified the only case plan component Mother had not complied with was drug testing. He testified he had last spoken to Mother in June 2020 and had reached out to her twice since that time. Rodriguez testified there were "no concerns" about Mother's visits with her children, which had been consistent and positive for the children. Rodriguez testified he had "no suspicion of [Mother] being under the

4

influence" during her visits with the children, noting the children would say "I love you" to Mother, and had a "very strong bond" with her. Rodriguez testified SSA's current practice for addressing substance abuse was to insist on complete abstinence, but also agreed "best practices" should instead focus on decreasing consumption.

Mother testified she "ha[d] been sober since . . . October 26th of 2018, three days before [M.C.] was born." When the court asked Mother if, at the time of the child's birth, she had admitted using methamphetamine, Mother twice answered she had done so before confirming she had not. She claimed she had never failed to submit her drug patches for testing and claimed every positive test result was "an error." Mother asserted a possible explanation for positive results was environmental residue, but also maintained she had not been exposed to any environment containing methamphetamine other than in April 2020, when a homeless woman threw a drug pipe that hit Mother in her arm, shoulder, and chest.

Mother claimed she was unaware of recent positive test results. She explained she had attempted to contact Rodriguez "[s]everal times" since June 2020, but had not been able to reach him. She presented evidence of negative nonpatch test results in 2019 and explained she had not been told to leave a previous shelter residence that same year, but instead chose to leave to accommodate unsupervised visits with her children. When asked why the unsupervised visits did not materialize, Mother first responded "[i]t was unclear at the time," but then confirmed it was because she incurred a positive drug test result "[f]or heroin, for a substance that [she had] never touched in [her] life."

At oral argument, SSA acknowledged Mother's participation in offered programs, her love for M.C., and her five-month period of sobriety between November 2019 and March 2020. SSA argued for the juvenile court to terminate family reunification services and set a permanent placement hearing for the child based on Mother's positive drug test results and her failure to acknowledge drug use. Counsel for

5

M.C. joined in SSA's position, asserting Mother had not made substantive progress in the most important area of her case plan: eliminating her methamphetamine dependence.

Mother's counsel argued that every aspect of Mother's participation in services, except her positive test results, favored reunification with her daughter. Counsel emphasized Mother successfully completed her substance abuse program, parenting education, anger management and general counseling. Counsel noted no behavior indicating substance use was reported during Mother's visits and asserted Mother's ability to maintain stable housing and employment contradicted a conclusion she was using drugs. Alternatively, counsel argued that if Mother were using drugs, her "stable lifestyle" demonstrated her drug use did not amount to drug abuse.

The juvenile court found Mother's testimony not credible and returning M.C. to Mother's custody posed a substantial risk of detriment to the child due to Mother's ongoing substance abuse. The court noted the case started because M.C. was born with drugs in her system and found Mother's drug test results trustworthy, despite Mother's denial she was using drugs. The court terminated reunification services and set a hearing to select a permanent plan for the child.

II

DISCUSSION

Mother argues there was insufficient evidence of detrimental risk because there was "no clinical evaluation of Mother on which to reliably conclude that Mother displayed or suffered from clinical substance abuse," or evidence of a link between any substance abuse and Mother's "parenting judgment or skills." We do not find Mother's contentions persuasive.

A. Standard of Review and Section 366.22

By the time of a juvenile court's 18-month status review hearing, "the Legislature has determined a child's need for stability and security within a definitive time frame becomes paramount . . . . At this hearing, the court must return children to

6

their parents and thereby achieve the goal of family preservation or terminate services and proceed to devising a permanent plan for the children." (*In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, 1788.) Section 366.22 controls the decision, providing in relevant part: "[T]he court shall order the return of the child to the physical custody of his or her parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (§ 366.22, subd. (a)(1).) Failure to "make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental." (*Ibid.*; see *Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322, 1343 (*Jennifer A.*) ["[d]rug testing is an important component" of a court-ordered plan].)

We review the juvenile court's decision to terminate reunification services and set a permanency review hearing under the substantial evidence standard of review,. Under this standard, we "must determine if there is any substantial evidence, that is, evidence which is reasonable, credible, and of solid value to support the conclusion of the trier of fact. [Citation.] In making this determination, all conflicts are to be resolved in favor of the prevailing party, and issues of fact and credibility are questions for the trier of fact. [Citation.] In [juvenile] dependency proceedings, a trial court's determination will not be disturbed unless it exceeds the bounds of reason." (*In re Ricardo L.* (2003) 109 Cal.App.4th 552, 564 (*Ricardo L.*).) Mother has the burden to show no substantial evidence supports the juvenile court's ruling. (*In re L. Y. L.* (2002) 101 Cal.App.4th 942, 947.)

Ample evidence supports the juvenile court's conclusion that returning M.C. to Mother's care posed a substantial risk of detriment based on Mother's extensive record of positive drug tests and her failure to acknowledge her drug abuse. It is undisputed M.C. was initially detained after being born with drugs in her system. It is also undisputed that in the 22 months between the court's dispositional order—i.e.,

7

adopting the case plan for Mother's family reunification services—and its decision to terminate those services, Mother's drug tests produced no less than 19 positive results, including no negative results for four months leading up to the court's ruling. Importantly, these test results stand in stark contrast to Mother's denial she was using drugs. The court reasonably could conclude Mother lacked credibility when she denied using drugs. Under these circumstances, Mother's failure to comply with her case plan that "all drug [and] alcohol tests [were] to be negative" also constitutes substantial evidence supporting the court's decision.

No other aspect of Mother's participation in her case plan reunification services alters our conclusion substantial evidence supports the juvenile court's order. Although it is not disputed Mother loves her daughter, demonstrated an authentic bond through visits, and put forth effort in SSA's offered programs, these points do not override the evidence and inferences supporting the court's conclusion there existed a "substantial risk of detriment" posed by Mother's substance abuse. (§ 366.22, subd. (a)(1); see § 300.2 ["[t]he provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child"].) Indeed, her continuing failure to overcome her drug dependence prevented her from transitioning to unsupervised visits with M.C. (See *In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1343 [failure to progress to unsupervised visits may be considered significant].)

Mother contends SSA's recommendation to terminate services was fatally undermined by Rodriguez's testimony that SSA should consider "decreased consumption" for a drug abuser in evaluating "whether and to what extent a parent's recovery was successful." But how much weight to give Rodriguez's testimony was a matter for the trial court to determine. Our task is to evaluate whether substantial evidence supports the juvenile court's ruling. Given Mother's extensive record of

8

positive tests and the reasonable inferences drawn from this evidence, it follows that substantial evidence supports the court's ruling.

Mother relies on *In re L.C.* (2019) 38 Cal.App.5th 646 (*L.C.*) and *Jennifer A., supra,* 117 Cal.App.4th 1322, to support her contention there was not substantial evidence she abused drugs or returning M.C. to Mother's custody posed a substantial risk of detriment to M.C.'s well-being. In *L.C.*, a child protection agency filed a juvenile dependency petition asserting the legal guardian of a six-year-old child who suffered from developmental delays abused amphetamine and methamphetamine. (*Id.* at p. 648.) The guardian missed a drug test, twice tested positive for methamphetamine use, and lied to a social worker about using. (*Id.* at pp. 648-650.) "[T]he juvenile court sustained [jurisdictional] allegations that [the guardian] abused [drugs] . . . render[ing] him unable to provide regular care for [the child] and plac[ing] her at risk of serious physical harm." (*Id.* at p. 651.)

In reversing for insufficient evidence, the appellate court held that "evidence of a legal guardian's occasional methamphetamine use outside the legal guardian's home and while the child was in the care of another adult in the home does not support dependency jurisdiction. . . . No substantial evidence showed that the legal guardian abused methamphetamine [nor that] the child was at risk of serious physical harm." (*L.C., supra,* 38 Cal.App.5th at p. 648.) The court reasoned "[n]o evidence supported any [] indicia of substance abuse" under the Diagnostic and Statistical Manual of Mental Disorders (DSM). (*Id.* at p. 652 [referencing criteria from the fifth edition of the DSM discussed in *In re Alexzander C.* (2017) 18 Cal.App.5th 438, 447, disapproved of on other grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1003, 1005-1010].) On the necessary link between substance abuse and risk of harm to the child, the court concluded there was no substantial evidence showing the guardian "ignored his parental responsibilities as a result of his occasional methamphetamine use." (*Id.* at p. 653.)

9

Mother acknowledges *L.C.* involved a juvenile court's ruling at the jurisdictional stage rather than the status review hearing at issue in this case. *Jennifer A.*, *supra*, 117 Cal.App.4th 1322, in contrast, reviewed a termination of family reunification services at an 18-month status review hearing. Regardless, Mother argues this distinction is not germane to the holdings in both cases and therefore we should follow *L.C.* and *Jennifer A.* and reverse the termination order in this case.

In *Jennifer A.*, a mother's two children were detained after being found unsupervised in their motel room residence. (*Jennifer A.*, *supra*, 117 Cal.App.4th at pp. 1328-1329.) Although SSA "did not allege substance abuse as a ground for detention," the mother's court-ordered case plan "required . . . twice weekly random drug testing." (*Id.* at p. 1327)

"Over a period of one and one-half years" (*Jennifer A.*, *supra*, 117 Cal.App.4th at p. 1327), within a context of "about 84 drug-free tests" (*id.* at p. 1343), the mother "missed about nine tests, was unable to void a few times, tested positive for alcohol [once] . . . (for which she underwent treatment), and tested positive for marijuana [twice]." (*Id.* at p. 1327.) "There was no evidence Mother [] used any drugs other than alcohol and marijuana." (*Id.* at p. 1345.) The social worker testified mother ""did not have a drug problem that affected her parenting skills." (*Id.* at p. 1346.) At the case's 18-month status review hearing, the juvenile court terminated reunification services for the mother and set a hearing to determine a permanent plan for her children. (*Id.* at p. 1340.) "The basis for the [court's] finding of detriment primarily was [the] Mother's missed, diluted, and positive drug tests between the 12-month review report/hearing and the 18-month review report/hearing." (*Id.* at p. 1346.)

We held substantial evidence did not support the juvenile court's substantial risk of detriment finding. (*Jennifer A.*, *supra*, 117 Cal.App.4th at p. 1326.) We noted specific "factors in th[at] case militating in favor of [the children's] return" (*id.* at p. 1346; see p. 1345) and concluded, as a primary issue, the mother had

"substantially complied with her reunification plan." (*Id.* at p. 1327.) We then considered the evidentiary basis for the court's ruling on substance abuse and pointed out "[n]o evidence was presented to establish [the mother] displayed clinical substance abuse" under the DSM. (*Id.* at p. 1346.) We further noted there was "'no clinical evaluation, no testing to indicate [substance abuse], just the opinion of the mother's social worker and a therapist.'" (*Ibid.*, quoting *Blanca P. v. Superior Court* (1996) 45 Cal.App.4th 1738, 1751.)

The decisions in *L.C.* and *Jennifer A.* bear scant resemblance to the circumstances in Mother's case.[2] In *L.C.*, the guardian's occasional use of methamphetamine when the child was in the care of another adult stands in contrast to Mother's chronic drug use. The juvenile court reasonably could conclude Mother's inability to curb her drug dependence, even though it could mean losing custody of her child, posed a substantial risk she would continue to abuse drugs while caring for M.C.

Contrary to Mother's suggestion, *Jennifer A.* does not stand for a general rule that sufficient evidence of substance abuse requires expert evidence on the point. While either a medical diagnosis or evidence establishing clinical substance abuse under the DSM certainly would be relevant information in determining abuse, neither are necessary—particularly at a dependency case's status review phase—to establish sufficient risk of detriment justifying termination of family reunification services. (*In re K.B.* (2021) 2021 Cal.App. LEXIS 6 [rejecting argument that court must use clinical definitions of substance abuse to distinguish use from abuse]; *In re Rebecca C.* (2014)

_____

[2] In her reply brief, Mother asserts she is not claiming "factual parity" with *Jennifer A.*, but instead advocating its "approach to analyzing risk of detriment from substance use." Given the fact-dependent nature of reviewing a juvenile court's finding of detrimental risk due to substance abuse, we note that factual similarity with case precedent is a central aspect of assessing that case's persuasive value. To the extent Mother is attempting to argue for a categorical rule of law for finding substance abuse—such as requiring expert evidence to establish it—we reject it, as discussed below.

11

228 Cal.App.4th 720, 725 [medical diagnosis parent has substance abuse problem is not required element of proof to find substance abuse problem is not a required element of proof to find substance abuse under section 300 subdivision (b)]; *In re Christopher R.* (2014) 225Cal.App.4th 1210, 1218 [clinical definition of substance abuse "is not a comprehensive, exclusive definition mandated by either the Legislature or the Supreme Court"; evidence may show parent is a current substance abuser even if parent's conduct "fell outside" clinical definitions].)

The combination of facts in this case that Mother's daughter was born with methamphetamine in her body and Mother regularly tested positive for using the same substance while simultaneously denying it, amply distinguishes this case from *Jennifer A.* and the other cases Mother relies upon to challenge the sufficiency of the evidence to support the juvenile court's decision. (Compare *L.C.*, *supra*, 38 Cal.App.5th at p. 648 ["occasional methamphetamine use" by legal guardian of six-year-old insufficient to show substantial risk of harm to justify juvenile court's jurisdiction]; *In re Rebecca C.* (2014) 228 Cal.App.4th 720, 722, 728 [use of marijuana, amphetamine, and methamphetamine by mother of teenage daughter insufficient to justify jurisdiction]; *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1217, 1219 [mother's prenatal use of cocaine, amphetamine and methamphetamine "unquestionably endanger[ed] the health and safety of her unborn child," supporting jurisdiction].)

As a general proposition, a juvenile dependency case could present circumstances showing that occasional substance *use* was not tantamount to substance abuse unless supported by testimony from an expert witness. (*Ricardo L.*, *supra*, 109 Cal.App.4th at p. 564 [substantial evidence requires "evidence which is reasonable, credible, and of solid value to support the conclusion of the trier of fact"].) But this case does not present those circumstances because substantial evidence supports the juvenile court's conclusion Mother's ongoing substance abuse posed a substantial risk of detriment to her daughter.

12

## III

### DISPOSITION

We deny Mother's petition for a writ of mandate to overturn the juvenile court's order terminating reunification services and setting a permanent plan hearing for the child.


ARONSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


FYBEL, J.