Filed 1/28/21  In re P.S. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re P.S. et al., Persons Coming Under the Juvenile Court Law. | B305233 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19CCJP07585A–C) |
| Plaintiff and Respondent, | |
| v. | |
| C.S. et al., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kim L. Nguyen, Judge.  Affirmed in part and dismissed in part.

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant C.S.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant J.C.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and David Michael Miller, Deputy County Counsel, for Plaintiff and Respondent.

_____

The juvenile court assumed jurisdiction over three sisters and removed the two older ones from parental custody. Substantial evidence showed the parents bruised these two with belts. After the parties filed their appellate papers, the juvenile court restored parental custody. One parent concedes her appeal is now moot. The other parent maintains he has been prejudiced by the juvenile court's erroneous assumption of jurisdiction. Because the court's finding of jurisdiction as to the older sisters was proper, we affirm in part. We also dismiss as moot the mother's appeal and the remainder of the father's appeal. Statutory references are to the Welfare and Institutions Code.

I

The Los Angeles County Department of Children and Family Services filed a section 300 petition on behalf of the children in November 2019. The children were then eight, six, and newly born. We refer to the children as the eldest, the middle child, and the infant to protect their anonymity. (Cal. Rules of Court, rule 8.401(a)(2).)

The petition asserts jurisdiction under section 300, subdivisions (a), (b)(1), and (j). The petition alleges Mother and her male companion physically abused the two older girls many times by hitting them with belts. The girls suffered pain, suffering, swelling, and bruises. The petition also asserts Mother

2

knew or should have known of, yet failed to prevent, her companion's abuse of the girls.

Mother's male companion is the biological father of the infant and the presumed—but not biological—father of the older girls. We refer to him as Father.

Concerning the infant, the petition alleges the parents' abuse of the older girls and Mother's failure to protect them from Father created a detrimental home environment and placed the infant at risk of serious physical harm.

The Department's investigation found the following.

On November 21, 2019, the middle child spoke with school personnel, who then made a child abuse referral to the Department. The child reported her mother recently spanked her and her older sister after finding pictures of the girls on her sister's phone. Father used a belt on them after he came home. The child had a bruise on her wrist and another one—"a bad one"—on her thigh that hurt.

The Department interviewed the child and her sister at school later that day. The eldest reported Mother and Father punished her and her sister by making them stay in a corner for long periods until their legs hurt. Sometimes they were spanked, and sometimes the spankings left marks. Father had spanked her at least 10 times before the latest incident. He used different belts on her and her sister. The eldest showed the social worker a "large, purplish bruise" on her forearm; this was from a leather belt Father used. The bruise was consistent with raising an arm in a defensive position. The girl's arm was swollen before, but the swelling was going down. She was afraid of Father. In her words: "He's really mean to us. He yells at us for no reason and he doesn't like my sister [ ]. Sometimes he hits me so hard with

the belt, I use the bathroom on myself and then I get in trouble for peeing on myself."

The middle child's interview was similar. She told the social worker Mother and then Father hit her with a belt on the day in question. They "always" hit her when she gets in trouble, usually with a belt. Father would laugh after hitting them. The child was scared of him and sometimes hid when he got upset. She said he did "mean stuff" to them but did not offer specifics. The social worker observed "extensive large, purplish and black bruises on the length of her entire left thigh, including the front and sides of her leg." A large, purple bruise covered the child's wrist, "consistent with a defensive mark." She was still in pain two days after the "whooping."

A police report from November 22, 2019 detailed the following: Officers met with the two girls at a hospital. Both girls said both Mother and Father had hit them with belts. The eldest reported she was whipped approximately eight times in the arm. She and her sister were "frequently" hit with a belt to the point where they "use[d] the restroom on themselves." The middle child—whose eyes immediately watered when asked what happened, and who answered the officers in whispers—said her parents hit her "everywhere." The reporting officer saw bruising on both girls.

At the time of the referral, Mother was at the hospital. She had just given birth to the infant. The Department interviewed Mother at the hospital, and afterwards. Mother admitted hitting the older girls with a belt a few times for the phone incident. She said she was shocked and angry after seeing a video of the middle child dancing inappropriately. Mother denied hitting them hard

and defended herself by claiming the girls bruised easily. Father was in the room at the time but did not hit the children.

Mother admitted using a belt on the girls in the past but maintained she usually disciplined by other means. According to Mother, Father never hits the girls, and they are not afraid of him.

Father told the Department he witnessed Mother "whooping" both girls with a belt for a few minutes that night. Then he "just left and let her [Mother] handle it." Later in the investigation, Father denied being present for the beating. He speculated the girls had been coached to say he hits them. Father admitted yelling at them and taking away their toys and television for discipline but said he does not hit the girls because they are not his kids to spank.

At the November 26, 2019 detention hearing, the juvenile court ordered the older sisters detained. The girls were temporarily living with their maternal grandparents. The infant (then a newborn and still nursing) was released to the parents.

On January 10, 2020, more than a month after the older sisters were detained, a social worker interviewed the girls again, this time during one of Mother's monitored visits. The eldest again described the beating she received for the phone incident. She "got hit all over," especially her arms and legs. She cried because it hurt, and she had bruising later that night. Mother hit her once before this incident; but she usually took away electronics. The child maintained she "deserved the whooping." She was not afraid of her parents and wanted to go home. She felt bad because Mother had always been there for her and her sister.

The middle child, too, confirmed Mother got mad and gave the girls a "whooping" for the phone incident. Mother hit her hand and legs with a belt. It was fast. But it hurt, and she cried. The bruise burned that night when she took a bath. This was her third whooping. Like her older sister, the middle child maintained she "should have gotten a whooping because I did wrong." She wanted to go home, missed her parents, and was not afraid of them.

This time, both girls maintained Father never has hit them with a belt.

On January 30th, more than two months after the older girls began living with their grandparents, the Department interviewed the girls a third time. The eldest child reported Father yells at her and her sister and makes them feel scared; but he never hit her. She first denied and then admitted telling the initial social worker Father hit her, explaining she did this because she did not want Mother to be with him. She does not want to share her mother with Father. But she wanted to go home, even if he was there.

The middle child told a similar story: Father only yelled at the girls and scared them but did not hit them. Her initial statements about Father were motivated by a desire to break up her parents so she could have her mother back. She, too, wanted to go home.

During this visit, the Department also interviewed the maternal grandmother. She had never seen Father hit the children and did not believe he ever did. The girls told her Father never hit them. They do not like sharing Mother with Father. And they are dishonest at times.

6

A last minute information report showed both parents were participating in anger management and parenting classes.

The juvenile court held a combined jurisdiction and disposition hearing on February 27, 2020. It found the older sisters' initial statements most credible. The court sustained the entire petition and declared the three children dependents of the court.

The court then ordered the older sisters removed from parental custody. However, it believed the infant was differently situated and kept her in parental custody, over the Department's objection.

Both parents appealed. Father challenges the juvenile court's jurisdictional findings and the removal order. Mother challenges only the removal order.

II

Recent events have rendered some issues moot.

On September 16, 2019, the juvenile court issued orders returning the older sisters to parental custody and terminating jurisdiction as to the infant. The court set a review hearing for the older sisters for March 17, 2021.

We took judicial notice of these orders on our own motion and requested briefing regarding whether the appeals, or issues therein, were now moot.

Mother concedes the juvenile court's orders have rendered her appeal moot. Father argues his appeal is not moot because the court's jurisdictional findings were erroneous, the existence of these findings can "haunt" him later, and this court can provide effective relief by vacating the findings. Father does not mention the removal order in his supplemental briefing.

7

The Department agrees with Mother and argues the issue of removal is moot. It also requests dismissal of Father's appeal as to the infant.

We agree with Mother that her appeal is moot, and we dismiss her appeal. (See *In re N.S.* (2016) 245 Cal.App.4th 53, 58–59 (*N.S.*) [appellate court dismisses appeal when it can no longer grant effective relief].) In addition, because the juvenile court terminated jurisdiction over the infant, we cannot provide effective relief as to this child. (See *id.* at pp. 61–63.)

Father argues an actual controversy remains, as the jurisdictional findings "will remain forever" and threaten unspecified future harm. But the three cases on which Father relies do not show any issue regarding the infant is justiciable.

In *In re J.A.* (2020) 47 Cal.App.5th 1036, 1050–1051, the appellate court exercised its discretion to address jurisdictional errors after the juvenile court terminated jurisdiction because the issue before it was likely to recur in the future and was one of public importance. The appellate court reasoned: "If we fail to exercise our discretion to resolve the jurisdictional appeal, the Department may feel free to continue to pursue jurisdiction in other cases where there is no evidence of substance *abuse,* and no evidence of substantial risk—only evidence that a child was born testing positive for marijuana, bolstered only by vague and unproven concerns." (*Id.* at p. 1051.) In other words, the Department had overreached in bringing the case, and the court believed it needed to curb future overreaching.

In *In re Justin O.* (2020) 45 Cal.App.5th 1006, 1018, a grandmother's appeal attacking jurisdictional findings was not moot, even though she no longer sought custody of the children,

8

because the findings had serious ongoing consequences for her—they resulted in "severely restricted" visitation rights.

And in *In re Adam D.* (2010) 183 Cal.App.4th 1250, 1258–1261, the issue was whether an appealable order existed where the juvenile court had ordered something akin to informal supervision under section 360, subdivision (b).

Here, Father identifies no continuing issue of public importance and no concrete negative consequence flowing from the jurisdictional findings concerning the infant. These particular findings are not the basis of any current family law or other order adverse to Father. (See *N.S.*, *supra*, 245 Cal.App.4th at p. 61.) Father's concerns instead are generalized and speculative. We decline to exercise our discretion to review these findings. (See *id.* at p. 59 [identifying circumstances in which a court may exercise such discretion even though it cannot provide effective relief].) And we dismiss as moot the portions of Father's appeal challenging these findings and the removal order.

The remaining issue is the validity of the juvenile court's jurisdictional findings concerning the older sisters. These children remain under the juvenile court's jurisdiction. Father argues "[n]either Mother's nor Father's conduct supported a finding that [the children] fell within the court's dependency jurisdiction." That is, he challenges the jurisdictional findings in their entirety. As we explain below, the juvenile court was right to assume jurisdiction over these two children.

### III

We review jurisdictional findings for substantial evidence. (*In re R.T.* (2017) 3 Cal.5th 622, 633 (*R.T.*).) In doing so, we indulge all reasonable inferences and resolve all conflicts in favor of the findings; examine the record in the light most favorable to

9

the juvenile court's determinations; and refrain from making credibility determinations.  (*Ibid.*; *In re D.P.* (2014) 225 Cal.App.4th 898, 902 (*D.P.*).)

Here, jurisdiction was grounded in section 300, subdivisions (a), (b)(1), and (j).  We focus on the first subdivision, as we can affirm the jurisdiction ruling if substantial evidence supports any ground enumerated in the petition.  (*D.P.*, *supra*, 225 Cal.App.4th at p. 902.)

Section 300, subdivision (a) provides for jurisdiction when a child has suffered or is at substantial risk of suffering serious physical harm inflicted nonaccidentally by a parent.

IV

Substantial evidence supports the juvenile court's decision to assume jurisdiction under this provision.

Substantial evidence shows Mother and Father intentionally inflicted serious physical harm on the older sisters in November 2019.  Substantial evidence also shows the parents' actions put the girls at substantial risk of such harm.

Both children reported Mother and Father beat them with a belt on the day in question.  Extensive bruising on their bodies corroborated their accounts.  The middle child was in pain days later.  The statements the girls made to school personnel, the initial social worker, and the police about this beating—all close in time to the incident—were consistent.  Mother admitted she hit the girls with a belt multiple times that day.

The record also contains credible evidence that Father allowed Mother to inflict serious physical harm on the girls, and vice versa.  Mother said Father was in the room when she used the belt on the girls.  Initially, Father admitted he was present for the beating.  But he did nothing to stop it.  Instead, he left

and let Mother "handle it." The eldest child told police Mother and Father together whipped her and her sister with belts. Each parent thus was an aggressor. Each was passive when the other was violent. Both minimized the severity of the abuse.

This was not the only time the parents had used belts on the girls. The middle child said her parents always hit her when she got in trouble, and usually with a belt. The eldest said Father often spanked her and her sister with a belt and would hit them so hard, they would wet themselves. Both children said they feared him.

This was not appropriate discipline. Dancing inappropriately and videotaping the dancing do not warrant a severe beating. The parents' conduct was excessively punitive, not genuinely disciplinary. (See *In re D.M.* (2015) 242 Cal.App.4th 634, 641 (*D.M.*) [outlining considerations for determining when parental discipline is reasonable or excessive].) Mother admitted she acted out of shock and anger.

The violence here is nothing like the discipline described in *D.M.*, *supra*, 242 Cal.App.4th 634, on which Father relies. There, a mother occasionally spanked her children on their bottoms with a hand or sandal. There was no evidence of marks or bruises from the spankings. (*Id.* at pp. 637–638.)

Contrary to Father's suggestion, this case also is unlike *In re Isabella F.* (2014) 226 Cal.App.4th 128, 139, where "[t]he primary motivating factor in declaring jurisdiction appears to have been to offer mother services," not to address any risk of serious harm to the children.

Father argues there was not a risk of serious harm to the children because he and Mother made substantial progress in completing anger management and parenting classes and were

11

cooperating with the Department. But here, there was substantial evidence of actual physical harm, so our analysis does not turn solely on risk.

The lone case on which Father relies for this argument does not help him. *In re L.C.* (2019) 38 Cal.App.5th 646 concerned a guardian's occasional drug use outside of the home and the child's presence. During the dependency proceedings, the guardian was contrite, ultimately admitted his drug use, and began drug testing on his own initiative. (*Id.* at p. 650–651.) Father's situation is different. He maintains he does not hit the girls and claimed the girls were coached to lie about him.

Father emphasizes the girls recanted their initial statements about him and revealed a motive for lying initially: they wanted Father out of Mother's life. In essence, Father asks us to reweigh the evidence. We decline. (See *R.T.*, *supra*, 3 Cal.5th at p. 633.)

The juvenile court correctly ruled the older sisters came under its jurisdiction. (See *In re Mariah T.* (2008) 159 Cal.App.4th 428, 438–439 [dependency jurisdiction proper where mother hit young child on the stomach and forearms with a belt, causing deep, purple bruises].)

## DISPOSITION

We dismiss Mother's entire appeal and Father's appeal as to the infant and as to disposition.  We affirm the juvenile court's ruling that it had jurisdiction over the older sisters.


WILEY, J.


We Concur:


BIGELOW, P. J.


STRATTON, J.