Filed 1/29/21 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re K.B. et al., Persons Coming Under the Juvenile Court Law.<br><br>_____<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>E.N. et al.,<br><br>  Defendants and Appellants. | B305420<br><br>(Los Angeles County Super. Ct. No. 20CCJP00282A–C)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

IT IS ORDERED that the opinion in the above-entitled matter filed on January 5, 2021, be modified as follows:

1. On page 9, the second paragraph of section II, from " '[W]hen a statute requires . . . ' " to "We apply that standard here" is deleted.

2. On page 16, the second paragraph of section III.C is deleted and replaced as follows:

> We must determine whether the record contains substantial evidence from which a reasonable trier of fact could find the existence of that fact to be highly probable. (*In re V.L.* (2020) 54 Cal.App.5th 147, 149.)

Plaintiff and Respondent's petition for rehearing is denied. [There is no change in the judgment.]

_____

BIGELOW, P. J.                    GRIMES, J.                    WILEY, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re K.B. et al., Persons Coming Under the Juvenile Court Law. | B305420 |
| _____ | (Los Angeles County |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Super. Ct. No. 20CCJP00282A–C) |
| Plaintiff and Respondent, | |
| v. | |
| E.N. et al., | |
| Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge.  Affirmed.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant E.N.

Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant M.B.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Melania Vartanian, Deputy County Counsel, for Plaintiff and Respondent.

———————————

The juvenile court exercised jurisdiction over mother M.B.'s three children, K.B. (daughter, age 14), J.B. (son, age 10), and J.N. (son, age seven), and ordered them removed from their parents. (We refer to the children by their initials to protect their anonymity. (Cal. Rules of Court, rule 8.401(a)(2).)) The mother challenges the juvenile court's orders regarding all three children. E.N., the presumed father of J.N., challenges the orders with respect to J.N. We affirm. Statutory references are to the Welfare and Institutions Code.

## I

We summarize some background about the parents, beginning with the mother and then moving to the father.

## A

The mother tested positive for methamphetamine and marijuana during a hospital visit in November 2019 while 18 weeks pregnant. The mother claimed to be unaware of the pregnancy. (The mother ultimately miscarried this pregnancy.) The reporting party was concerned the mother was unable to care for her other children as she was "out of it," could not follow the conversation, kept falling asleep, and looked homeless. The mother initially denied any substance use, but later admitted she had used methamphetamine three *days* earlier. A week later, the mother told a social worker she had used methamphetamine two or three *weeks* earlier.

2

The same day, the mother admitted she used marijuana, but she made this admission only after being confronted with the test results.  The mother said she had gotten the drugs from a friend, but claimed not to know the friend's name or contact information.  The mother alternatively said she had tried methamphetamine because she was curious and because the friend had pressured her.

When a social worker visited the mother a few days after the test, the mother mumbled.  Her tone was low and fast.  This was on November 26, 2019.  The evidence conflicted about whether the social worker thought the mother was under the influence during this visit.  A December 31, 2019 Detention Report states the mother appeared groomed and coherent but that she *did* appear to be under the influence of drugs or alcohol during the social worker's visit.  A declaration attached to the Application and Declaration filed on January 10, 2020, however, states the mother appeared groomed, coherent, and did *not* appear to be under the influence of drugs or alcohol during this visit.

The mother denied a history of drug or alcohol use, but her record shows an arrest for possession of a controlled substance in 2012.  The family's pastor, who is a relative of J.B.'s father, believed the mother might have had a history with drugs and/or alcohol a few years before.  The mother later admitted she uses marijuana once a month, claiming she uses at night away from the children.  She denied using marijuana with the father.

The children did not report seeing the mother using drugs or alcohol or acting "weird" or "different."  But J.B. said the mother "mostly gets sleepy by 5pm so she goes to sleep and wakes up the next day."  J.N. said the mother sometimes sleeps for a

long time so the children have to wake her up when it is time for school.  The father claimed ignorance of the mother's drug use, though they were living together at the time of her 2012 arrest and he tested positive for methamphetamine within eight days of the mother's positive test for the same drug.  The mother said the father was aware of her marijuana use.

The mother has not enrolled in a substance abuse program despite agreeing to do so.  The mother missed two tests scheduled by the Department.  She tested negative twice.

B

We turn to the father's situation.

Eight days after the mother's positive test, the father tested positive for amphetamine and methamphetamine.  The father denied any recent drug use.  He said the test was wrong and he was being set up.  The father eventually admitted past methamphetamine use, but resisted providing details.  At various points the father said he had not used methamphetamine in two to three months and that he had not used it in years.  He refused to say how often he had used it.  He began using methamphetamine at age 18 and would use every weekend, but stopped years ago.  Later the father admitted he began using marijuana at age 15 and used it every day until he moved in with the mother at age 20.  He uses marijuana occasionally now and said he used with the mother once.  The father began drinking at age 20 and would drink every weekend, about 12 beers per sitting, until two to three years ago.  He began using cocaine at age 18, increasing to weekly use until "a while ago."

The father has a criminal history.  He has been arrested many times, including for "disorderly conduct: intox drug/alcoh" in October 2009 and for possession of a controlled substance in

4

October 2012.  His criminal history shows convictions for driving under the influence and for driving with a suspended license.  His record also includes many failures to appear in court, with resulting warrants.  His most recent arrest, in June 2019, was for possession of a controlled substance.

J.B. said he had seen the father drink in their previous house.  J.B. said when the father drinks the mother "leaves him alone until he is done being drunk and then she tells him to stop drinking because then he might go drive and crash."  J.N. also reported having seen the father drink.  J.N. said, when the father drinks, the father gets dizzy, sometimes acts grumpy, and sleeps for a long time.  J.N. also stated he is sometimes home alone with the father when the father drinks.  All three children reported the father works nights and is in his room or sleeping most of the day.  The family's pastor believed the father had problems with drugs and alcohol about five years ago.  Other family members confirmed the father used to drink and the mother and the father would argue about his drinking.  The mother denied the father had used drugs "recently," but said he may have used a few years ago when he would go to Bakersfield to visit family for two days at a time.  The mother said the father does not drink in the house.  She said she was surprised by his positive test because she "never knew that he was using drugs."  However, a number of the father's arrests relating to controlled substances and alcohol were while he was living with the mother.

After his first positive test, the father missed two scheduled tests, possibly due to paperwork mistakes that were not his fault.  The father tested negative once.

## C

The maternal grandfather lives with the parents and the children. He works during the day and comes home at night. He said he had not seen the parents under the influence and did not know about drug or alcohol use by either parent.

## D

The Department's investigation found the two sons had poor school attendance. J.B. was absent 13 days and tardy 34 days; J.N. was absent 20 days and tardy 20 days. School officials had concerns about both boys' hygiene. J.N.'s school also had concerns with J.N.'s behavior.

J.B. said the children needed to behave so the parents would not hit them. J.B. denied the parents hit him. However, he later said the parents sometimes hit the children with a belt or hand. J.B. said if they are hit hard, they can still use their devices, but if they are not hit hard, they are not allowed to use their devices. J.N. said the mother had used the belt and a sandal to discipline him. Later J.N. said the parents used a belt or a hand. He said it hurts and he is a little scared when the parents hit him. The parents claimed they do not use physical discipline. A social worker reported "Per mother, if she is to hit the children they would listen to her."

## E

The family has a history of involvement with the Department.

In February 2012, the Department substantiated allegations of general neglect of K.B. and J.B. by the mother. Upon investigation, the Department confirmed the family's gas and electricity had been disconnected for about a month because of inability to pay. The house also was unclean, with stains on

6

the floor and sofas, dirty dishes, and messy and cluttered rooms. The Department gave the family referrals for support and assistance.

In April 2015, the Department investigated allegations that the children were always outside unsupervised and appeared unkempt and perhaps ill. The Department substantiated allegations the house was in disarray and extremely dirty, causing a safety hazard. The children appeared clean and healthy. A follow-up visit revealed a broken window that required a further safety plan. The referral was closed as "situation stabilized."

In August 2019, the Department received a referral relating to potential physical abuse of J.N. by an aunt and uncle. The referral was closed because the mother was protective and the people involved were no longer living with the family.

The referral at issue in this case stems from the parents' positive drug tests in November 2019.

F

In December 2019, the parents and the Department agreed on a safety plan. Under the plan, no one under the influence was to care for the children; the family would be available to the Department; the parents would participate in a drug and alcohol program; the parents would submit to tests for drugs; and the children would live with relatives for the next six days. As noted above, the parents missed some of the scheduled tests but argued this was the fault of poor paperwork by others. The parents did not enroll in substance abuse programming as they had agreed to do.

G

On January 10, 2020, the court granted a temporary removal order for the children. K.B. was placed with a maternal aunt, and J.B. and J.N. were placed together in a foster home.

On January 16, 2020, the Department filed a section 300 petition on behalf of K.B., J.B., and J.N. The petition alleged the mother has a history of illicit drug use and is a current user of amphetamine, methamphetamine, and marijuana, which renders the mother unable to provide regular care and supervision of the children; the mother tested positive for methamphetamine and marijuana on November 19, 2019; the mother had been under the influence of marijuana while caring for the children; and the mother's illicit drug use endangered the children's physical health and safety. The petition alleged the father had a five-year history of substance use and is a current abuser of methamphetamine, amphetamine, and marijuana, which renders the father unable to provide regular care and supervision of J.N.; the father had tested positive for methamphetamine and amphetamine on November 27, 2019; and the father's substance abuse endangers J.N.'s physical health and safety.

On January 17, 2020, the court held a detention hearing and ordered the children detained.

On February 27, 2020, the juvenile court held a jurisdiction and disposition hearing. The court sustained the allegations as to the mother and the father and declared the children dependents of the court. The court then addressed disposition and found there was substantial danger to the physical health, safety, protection, or physical or emotional well-being of the children and no reasonable means to protect the children without removing them from the parents' custody. The court found that

8

the parents were in denial about substance abuse and had not been truthful with the Department. The court found that the substance abuse affected the children because of the hygiene and school attendance issues. The court ordered reunification services. It also ordered drug testing for the parents and required them to attend a parenting class and individual counseling. The court granted monitored visits. Both parents appealed.

## II

Under section 300, subdivision (b)(1), the court may exercise jurisdiction over a child who has suffered, *or there is a substantial risk that the child will suffer*, serious physical harm or illness as a result of the failure of the parent adequately to supervise or protect the child or to provide regular care for the child due to the parent's substance abuse.

"[W]hen a statute requires a fact to be found by clear and convincing evidence, and when there is a substantial evidence challenge, the reviewing court must determine whether the record contains substantial evidence from which a reasonable trier of fact could find the existence of that fact to be highly probable." (*In re V.L.* (2020) 54 Cal.App.5th 147, 149 (*V.L.*); *id.* at pp. 153–155.) We apply that standard here.

## III

Sufficient evidence supports the juvenile court's decision under subdivision (b) of section 300. The court correctly ruled these children were within its jurisdiction.

## A

The trial court properly found the mother's conduct put her children at substantial risk of serious physical harm. The mother routinely disappeared from her children's lives at about 5:00 p.m.

9

until they woke her the next morning for school. It was reasonable for the juvenile court to infer the mother's drug use had something to do with this conduct. The resulting failure to supervise the children put them at serious risk. Without supervision, nothing protects children from a world of serious and sudden danger.

1

The mother argues the record does not support the finding she abuses methamphetamine and marijuana. The mother relies on case law that applied clinical definitions of substance abuse, including *In re Drake M.* (2012) 211 Cal.App.4th 754 (*Drake M.*). She argues she neither has been clinically diagnosed with a substance abuse disorder nor does she fit the clinical definitions from the fourth or fifth edition of the Diagnostic and Statistical Manual of Mental Disorders.

We join our colleagues in the Second Appellate District, Division Seven in rejecting this approach from the *Drake M.* opinion. The *Drake M.* formulation "is not a comprehensive, exclusive definition mandated by either the Legislature or the Supreme Court, and we are unwilling to accept [the] argument that only someone who has been diagnosed by a medical professional or who falls within one of the specific DSM-IV-TR categories can be found to be a current substance abuser." (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1218 (*Christopher R.*).)

This is not the first time we have parted company with this aspect of the *Drake M.* decision. (See *In re Rebecca C.* (2014) 228 Cal.App.4th 720, 725–726 (*Rebecca C.*).)

The mother argues the only evidence of her substance use is (1) one positive test, (2) statements by the family's pastor that

she might have had a history with drugs or alcohol a few years ago, and (3) a 2012 arrest for possession of a controlled substance. She also emphasizes statements from the children and other relatives that they have not seen her under the influence.

Ample evidence shows the mother currently abuses drugs. The juvenile court was entitled to conclude the mother had been transparently dissembling about her drug use. A reasonable inference was the mother was trying to hide her ongoing addiction. The trial court was entitled to draw this reasonable inference.

We summarize evidence about the mother's dissimulation. Despite the positive test, the mother initially denied all drug use. She then admitted using methamphetamine, but she did not tell the truth about using marijuana until pressed. She changed her story about her use of methamphetamine, claiming it had been three *days*—and then she revised this to a few *weeks*—before the drug test. She said she had gotten the methamphetamine from a "friend," but said she did not know her friend's name. The mother claimed the father did not know about her drug use and she was not aware of drug use by the father despite the fact both tested positive for methamphetamine within days of each other. The mother delayed admitting her current and ongoing use of marijuana. She and the father gave conflicting statements about whether the father was aware of her marijuana use and whether they had ever used marijuana together. She denied previous drug use, though her record shows she was arrested in 2012 for possession of a controlled substance. The children reported that the mother gets sleepy and goes to sleep around 5:00 p.m. every day and sometimes has to be woken up the next morning to take the kids to school. Although there is evidence that the mother's

11

failure to test was not her fault, she has only managed to test twice since her positive test. The mother failed to enroll in the substance abuse programming she agreed to in the safety plan.

The record supports the trial court's finding.

2

The mother argues there is not enough evidence to support a finding that the children were in substantial danger of serious physical harm. The mother contends courts find substantial physical danger only in two instances: (1) where there is an identified and specific hazard in the child's environment, typically an adult with a proven record of abusiveness; and (2) where the children are of tender age. According to the mother, this case fits neither scenario. The mother argues she is not an adult with a history of abusive behavior. Although there was some conflicting evidence about whether the parents used physical discipline with the children, the Department does not seem to argue the mother is physically abusive.

Contrary to the mother's argument, sufficient evidence shows she created a serious risk of physical harm to her children. She left them unsupervised most of the time they were home. Children are immature, inquisitive, clever about escaping, and inexperienced with life's hazards. With impulsive urges and without much judgment about what could go wrong, children need supervision. A speeding car, a fire, a fall, a predator: disasters can strike swiftly and without warning.

The juvenile court fairly could infer the mother left her children largely unsupervised every evening. The mother goes to bed or becomes unavailable each evening around 5:00 p.m. The father similarly is asleep or in his room for most of the time he is at home. The only other adult in the household, the maternal

12

grandfather, does not return from work until night time.  The children were under the mother's supervision at the time someone at the hospital reported her positive test and that she seemed "out of it."  And although the mother claims the father cares for the children when she uses marijuana, the children said he is always sleeping or in his room.

The court need not wait for disaster to strike before asserting jurisdiction.  (*In re I.J.* (2013) 56 Cal.4th 766, 773.)  This is why the statute uses the word "risk."

These facts distinguish *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1004 and *Rebecca C.*, *supra*, 228 Cal.App.4th at pp. 727–728.  In neither case was there evidence the parents' drug abuse affected care of the children.

The mother also argues the children are not of tender age.  When a child is of tender age, a parent's substance abuse can be prima facie evidence of a risk of serious physical harm or illness.  (*Christopher R.*, *supra*, 225 Cal.App.4th at p. 1219.)  Direct evidence of lack of supervision, which we have here, means this case does not turn on prima facie evidence.

By the same token, the mother cites *In re Janet T.* (2001) 93 Cal.App.4th 377 to argue failure to attend school does not create a substantial risk of serious physical injury or illness.  The direct evidence of the mother's lack of supervision, however, makes other evidence superfluous.  The problems with school attendance and the sons' poor hygiene are consistent with lack of supervision, but the mother's actual failure to supervise is the direct and decisive evidence of substantial risk of harm in this case.

## B

Sufficient evidence also supports the finding that the father's substance abuse put J.N. at a substantial risk of serious physical harm.

### 1

The father argues there is little evidence in the record that he is a substance abuser. He repeats some of the mother's arguments, which we have rejected and do not reiterate.

The father argues he is employed, he contributes to the children's financial needs, the children are attached to him, and they are meeting developmental milestones. The Department does acknowledge these strengths, but they do not negate the evidence of father's substance abuse and his failure to supervise the children.

The father relies on the inapposite case of *In re L.C.* (2019) 38 Cal.App.5th 646. *L.C.* involved a legal guardian who had used methamphetamine six or seven times in about a year. (*Id.* at p. 650.) Although the legal guardian initially lied to the Department about his drug use, once he realized he could lose custody of his daughter, he came clean and reformed. (*Ibid.*) He immediately ceased drug use, obtained drug tests, and enrolled in a substance abuse program. (*Id.* at pp. 650–651.) The Department found that, even when the legal guardian used methamphetamine, he ensured his daughter was properly cared for and supervised by another adult. The guardian never cared for his daughter himself while he was under the influence. (*Id.* at p. 653.) This is a far cry from the father's situation. The father continues to deny any substance abuse, claims he was set up, and has taken no steps to address his drug use. He has not been

14

candid with the Department about his past and current use.  *L.C.* does not help the father.

The father's criminal history substantiates the court's finding.  The family's pastor corroborated the father's drug and alcohol problems about five years ago.  Although the father eventually confessed to a substantial history with methamphetamine, cocaine, and marijuana, he continued to deny using methamphetamine before his positive test and refused to provide details about his current abuse.  He and the mother denied he drinks in the house, but the children said otherwise.  The children also described conversations between the mother and the father about his drinking.  Another family member detailed arguments between the parents on the subject.  The children said the father spends much of his time in his room.

As with the mother, sufficient evidence supports the finding the father is a substance abuser.

2

The father argues that, even if he is a substance abuser, there is not enough evidence to show his abuse caused a substantial risk of serious physical harm to the children.  As did the mother, the father points to statements by the children and family members that they had not seen the father under the influence; but this does not nullify other evidence in the record.

The father incorrectly argues finding harm here "would essentially mean that physical harm to a child is *presumed* from a parent's substance abuse under the dependency statutes, and that it is a parent's burden to prove a negative, i.e., the *absence* of harm."  We do not presume harm.  Rather, we find there was enough evidence to permit the juvenile court to infer the risk of physical harm from the father's failure to supervise the children.

15

The father argues past events, like his past drug use, are probative only where the same kind of harm is likely to continue in the future. A court is entitled to infer past conduct will continue where the parent denies there is a problem. (*In re A.F.* (2016) 3 Cal.App.5th 283, 293 [courts properly consider denial as a relevant factor in determining whether persons are likely to modify their behavior in the future without court supervision].) The father seems to be fully in denial about the key features of this situation.

The father rightly notes a criminal record alone does not bear on parenting abilities. But a criminal record can corroborate other evidence of substance abuse, as it does here.

C

Sufficient evidence supports the juvenile court's dispositional order removing the children. As the parents note, before the juvenile court may order a child physically removed from his or her parent's custody, it must find, by clear and convincing evidence, the child would be at substantial risk of harm if returned home and there are no reasonable means by which the child can be protected without removal. (§ 361, subd. (c)(1).)

Again we must determine whether the record contains substantial evidence from which a reasonable trier of fact could find the existence of that fact to be highly probable. (*V.L.*, *supra*, 54 Cal.App.5th at p. 149.)

The parent need not be dangerous, and the minor need not have suffered actual harm before removal is appropriate. (*In re T.V.* (2013) 217 Cal.App.4th 126, 135–136.) The purpose of the statute is to avert harm. (*Ibid.*)

16

The parents repeat their arguments when attacking the dispositional order.  Each argues there was not substantial evidence to support the court's findings that they are substance abusers or that the children were at risk of harm, so there was no basis to remove the children.  As we have discussed, sufficient evidence supports both findings, and as to each parent.  The same evidence supports the juvenile court's removal of the children.

The mother argues the maternal grandfather's presence in the home and the mother's regular contact with other relatives showed the children were safe with her.  But the maternal grandfather works all day and is only at home at night.  The maternal grandfather and the maternal relatives all claimed they were unaware of drug use by the mother and the father.  From this the court could infer their help would not supply adequate supervision for the children.

## DISPOSITION

We affirm.


WILEY, J.


WE CONCUR:



BIGELOW, P. J.



GRIMES, J.


17