Filed 3/25/21  In re Madison V. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re MADISON V., et al., Persons Coming Under the Juvenile Court Law. | B306729 (Los Angeles County Super. Ct. No. 20CCJP01090A-B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,  Plaintiff and Respondent,  v.  LESLIE F.,  Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Daniel Zeke Zeidler, Judge.  Affirmed.

Lori Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, Acting County Counsel, Kim Nemoy, Assistant County Counsel and Jane Kwon, Principal Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

The juvenile court exerted dependency jurisdiction over mother's nine-year-old and 10-month-old daughters on the basis of mother's longstanding and continued use of methamphetamine, including while pregnant with the younger child. On appeal, mother argues that the court's assertion of jurisdiction is unsupported by substantial evidence. We disagree, and affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts

Leslie F. (mother) has two children with two different fathers—namely, Madison (born in June 2011) and Danielle (born in February 2020).

Mother has been using methamphetamine, on and off, for over 16 years. Prior to Madison's birth, mother used the drug almost daily. Although mother denied any and all use after Madison's birth in 2011, she tested positive for methamphetamine four times between March and December of 2019. Three of those times was while pregnant with Danielle, and two of those tests revealed "very high" levels of the drug in mother's body. Mother has been very secretive about her drug use, as no one has caught her in the act of ingesting the drug.

Because mother had not used any methamphetamine immediately before Danielle's birth, both mother and Danielle tested negative for any drugs at time of birth. Fortunately, mother's prior drug use while pregnant did not have any effect on Danielle's development, as she was born healthy.

2

Mother was unemployed and struggling financially. She was also homeless, living in a recreational vehicle (RV) parked on a street in an industrial area with a lot of traffic; the RV had no electricity or running water. Mother was in denial about her pregnancy with Danielle and made a conscious decision not to seek prenatal care because "[she] did not want to believe [she] was pregnant." Mother opted instead to obtain medical care at the emergency room of the hospital if she had any complications. Mother had purchased no baby supplies and made no arrangements for childcare at the time of Danielle's birth.

Although mother sent Madison to live with her paternal grandparents, mother occasionally had Madison stay with her in the RV. When Madison stayed, she slept on blankets on the floor and did not shower for extended periods of time; after one visit, Madison contracted a serious head lice infestation.

## II. Procedural background

### A. *Petition*

On February 25, 2020, the Los Angeles County Department of Children and Family Services (the Department) filed a petition asking the juvenile court to exert jurisdiction over Madison and Danielle based on mother's "history of substance abuse" and "current abuse[]" of methamphetamines and Danielle's father's "fail[ure] to take action to protect" her; these shortcomings, the petition went on to allege, "endanger[s]" the girls' "physical health and safety and places [them] at risk of serious physical harm, damage and danger" (thereby rendering jurisdiction appropriate under Welfare and Institutions Code section 300, subdivision (b)(1)).[1]

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

The juvenile court detained both girls from mother and ordered her to submit to random drug testing.

**B.    *Interim period***

While the Department's petition was pending in juvenile court, mother used methamphetamine on March 8, 2020.  At the end of March, mother did not appear for a further drug test.  In mid-May, mother checked into a residential drug treatment program—and checked herself out the very next day.

**C.    *Jurisdictional and dispositional hearing***

On July 8, 2020, the trial court held the jurisdictional and dispositional hearing.  The court sustained the jurisdictional allegation.  In so sustaining, the court relied upon mother's denial of drug use during her pregnancy and her continued use of drugs; that Danielle was at risk as a child of "tender years"; and that Madison, while not a child of tender years, was still "very young" and at risk by virtue of mother's failure or refusal to seek treatment for her longstanding drug abuse and its manifestations, including her filthy RV.

The court then removed the girls from mother's custody; granted her monitored visitation; and ordered reunification services.  The juvenile court terminated jurisdiction for Madison and placed her in the home of her father.

**D.    *Appeal***

Mother filed this timely appeal.

## DISCUSSION

Mother argues that the juvenile court's jurisdictional ruling is not supported by the record.  A juvenile court may exert dependency jurisdiction under section 300, subdivision (b)(1) if, among other things, "there is a substantial risk that [a] child will suffer[] serious physical harm or illness[] as a result of . . . the

4

inability of the parent . . . to provide regular care for the child due to the parent's . . . substance abuse." (§ 300, subd. (b)(1).) In evaluating whether a juvenile court's jurisdictional findings are supported by the record, we ask only whether "substantial evidence, contradicted or uncontradicted, supports" those findings. (*In re I.J.* (2013) 56 Cal.4th 766, 773.) In so doing, we consider the record as a whole, and resolve all conflicts and draw all reasonable inferences to support the juvenile court's findings; we do not reweigh the evidence. (*In re Lana S.* (2012) 207 Cal.App.4th 94, 103.)

As the plain language of section 300, subdivision (b)(1) makes clear, dependency jurisdiction must be based on more than a parent's use of drugs. (*In re L.C.* (2019) 38 Cal.App.5th 646, 654 [parent's "'use of methamphetamine, without more, cannot' support jurisdiction"]; *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003 [same].) To warrant the exercise of dependency jurisdiction, there must *also* be a "nexus" between the parent's drug use and the risk of harm to the child by virtue of the parent's "failure to ensure [that the child] w[as] safely cared for and supervised." (*In re Natalie A.* (2015) 243 Cal.App.4th 178, 185 (*Natalie A.*).) Risk to a child from substance abuse can be established either by (1) proof of "'an identified, specific hazard in the child's environment,'" or (2) proof that the child is of "tender years," in which case "the finding of substance abuse is prima facie evidence of the inability of the parent or guardian to provide regular care resulting in a substantial risk of physical harm." (*In re Drake M.* (2012) 211 Cal.App.4th 754, 766-767 (*Drake M.*), italics omitted.)

Substantial evidence supports the juvenile court's jurisdictional findings.

There is substantial evidence of mother's substance abuse. Mother admitted to using methamphetamines for at least 16 years, including a period of near-daily drug use. In the last year, she repeatedly used methamphetamine while pregnant with Danielle and used it twice more after the Department initiated these dependency proceedings. (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1217 (*Christopher R.*) ["missed" test is "the equivalent of a positive test result"].) She has also refused to address her abuse by denying it, by missing drug tests, and by not attending drug treatment services.

There is also substantial evidence of risk to the children arising from mother's substance abuse. Danielle is approximately one year old, and is therefore a child of "tender years." (*Christopher R.*, *supra*, 225 Cal.App.4th at p. 1219.) As such, mother's drug abuse is presumed to place Danielle at risk of physical harm due to her need for mother's constant attention. Madison—at age nine—is beyond her tender years (although not by a lot), but substantial evidence supports the juvenile court's finding that mother's methamphetamine use places Madison at substantial risk of serious physical harm. The danger posed by mother's drug use is heightened by its longstanding history (*In re R.R.* (2010) 187 Cal.App.4th 1264, 1284 [noting how parent's "long history of methamphetamine use" contributed to risk]), by mother's denial of drug use (*In re A.F.* (2016) 3 Cal.App.5th 283, 293 ["[D]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision"]), and by mother's continued use of drugs and refusal to seek treatment after this dependency proceeding began and hence at a time when she is aware of the importance of confronting and addressing her drug use (see also, e.g. *In re Lana*

6

*S.*, *supra*, 207 Cal.App.4th at pp. 105-106 ["lengthy history of drug abuse, denial of any drug problem," and "refusal to voluntarily drug test and enter drug treatment" sufficient evidence to support jurisdiction and removal], but, cf. *In re L.C.*, *supra*, 38 Cal.App.5th at p. 653 [risk reduced when parent "modifie[s] his conduct when he realize[s] that he could lose [his child]"]).  And mother's care of Madison—albeit limited in duration due to mother's decision to place Madison with the paternal grandparents—nevertheless shows that mother's drug use may be placing Madison at risk of physical harm:  Mother let Madison go weeks without bathing, sent her back to the paternal grandparents with a severe infestation of head lice, and would take random naps in the middle of the day that precluded her from watching Madison.  Although Madison has yet to be seriously harmed by the inattentiveness arising out of mother's drug use, that is largely because she only spends a limited amount of time in mother's custody.  (Accord, *In re Alexzander C.* (2017) 18 Cal.App.5th 438, 450 ["'the only reason why the[] children are doing fine is because they . . . have relative support . . .'"], overruled on other grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010.)  More to the point, "[a] juvenile court 'need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.'" (*In re L.W.* (2019) 32 Cal.App.5th 840, 849, quoting *In re R.V.* (2012) 208 Cal.App.4th 837, 843.)  In light of the significant potential for harm boiling beneath the surface, there is substantial evidence of risk to Madison.

Mother responds with what boils down to two arguments.

First, mother argues that the record shows, at most, "substance *use*," but section 300 requires proof of "substance

*abuse*" within the meaning of *Drake M.*, *supra*, 211 Cal.App.4th 754. *Drake M.* held that a parent engages in "substance *abuse*" only if (1) a medical professional has diagnosed the parent as having a substance abuse problem, or (2) the parent's substance abuse meets the definition of a substance abuse problem as defined by The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM). (*Id.* at p. 766, italics added.) To begin, we join several other courts in declining to follow *Drake M.* to the extent it purports to require such a showing in every case. (*In re Rebecca C.* (2014) 228 Cal.App.4th 720, 727; *Christopher R.*, *supra*, 225 Cal.App.4th at p. 1218.) Further, the evidence in this case satisfies *Drake M.*'s second showing in any event because the DSM's definition reaches the "'"failure to fulfill major role obligations at work, school or home"'" (*Natalie A.*, *supra*, 243 Cal.App.4th at p. 185), and the failure to fulfill a major role obligation at home includes "'"neglect of children or [the] household"'" (*ibid.*). Here, mother is unemployed and thus has failed to *have* a major role obligation at work; mother has been neglectful of the girls by refusing to obtain prenatal care and using methamphetamines while pregnant with Danielle, by allowing Madison to go weeks without bathing and to become infested with head lice, and by napping supposedly from exhaustion while caring for Madison; and mother has been neglectful of the household by maintaining an unsanitary living space for Madison. What is more, Madison reported that mother and Danielle's father "argue a lot," and Madison's father indicated that mother instigated domestic violence against him when they lived together, which is another sign of substance abuse under the DSM. (*Natalie A.*, at p. 185

[""interpersonal problems caused by or exacerbated by the effects of the substance,"" such as ""physical fights""].)

Second, mother analogizes this case to other cases where the children were "receiving excellent care" despite their parent's drug use during that parent's "private moments." (*In re L.W.*, *supra*, 32 Cal.App.5th at p. 850; *In re R.R.*, *supra*, 187 Cal.App.4th at p. 1284.) Each of the cases mother cites, however, are factually distinguishable. In *In re James R.* (2009) 176 Cal.App.4th 129, the court found insufficient evidence to exert jurisdiction where the mother stopped all drug use after the children were born (*id.* at p. 137); mother's drug use—and the risk it poses—did not stop with Madison's or Danielle's births. In *In re J.A.* (2020) 47 Cal.App.5th 1036 and *In re David M.* (2005) 134 Cal.App.4th 822 (*David M.*), the court found insufficient evidence to exert jurisdiction where the mothers had consumed marijuana while pregnant and their babies were born healthy (*In re J.A.*, at pp. 1048-1049; *David. M.*, at pp. 829-830); mother's drug use here involves a more harmful drug and is more longstanding, has persisted despite juvenile court supervision, and has manifested itself in neglectful behavior. In *Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322, the court found insufficient evidence to exert jurisdiction where the mother was gainfully employed and had approximately "84 drug-free" tests, and the children were healthy and well adjusted, even though the mother tested positive for marijuana once and missed nine tests (*id.* at pp. 1326-1327); mother here is unemployed and her drug use has been confirmed on at least four occasions when she tested positive for methamphetamine. We appreciate that cases involving a parent's drug use fall along a spectrum: Mother's drug use and the risks it poses in this case is not located at the

9

more egregious end of that spectrum, but—as these cases illustrate—it is located past the point at which dependency jurisdiction is appropriate.  That is all we may examine under substantial evidence review.

Because mother's challenge to the jurisdictional finding fails, her challenge to the removal order based on the invalidity of the jurisdictional finding also fails.

## DISPOSITION

The orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
HOFFSTADT


We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
CHAVEZ

10