Filed 7/26/19 Certified for Publication 8/12/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re L.C., a Person Coming Under the Juvenile Court Law. | B294490 (Los Angeles County Super. Ct. No. 18LJJP00035) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. PEDRO C., Defendant and Appellant. | |

APPEAL from a jurisdictional order of the Superior Court of Los Angeles County, Steven E. Ipson, Commissioner. Reversed.

Leslie A. Barry, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kristine P. Miles, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

———————————

In this appeal, we hold that evidence of a legal guardian's occasional methamphetamine use outside the legal guardian's home and while the child was in the care of another adult in the home does not support dependency jurisdiction under Welfare and Institutions Code section 300, subdivision (b).[1] No substantial evidence showed that the legal guardian abused methamphetamine, and no substantial evidence showed that the child was at risk of serious physical harm. We therefore reverse the juvenile court's jurisdictional order.

## FACTUAL AND PROCEDURAL BACKGROUND

Pedro was six-year old L.'s legal guardian since 2015 and her primary caretaker since 2013.[2] It was undisputed that Pedro and L. shared a close relationship. Pedro does not have a criminal history.

### 1. Petition

On October 12, 2018, DCFS filed a petition. The section 300, subdivision (b) allegations against Pedro

---

[1] All statutory references are to the Welfare and Institutions Code.

[2] Prior to Pedro's undertaking the role of legal guardian, the juvenile court removed L. from the custody of her mother, Pedro's sister. L.'s siblings were also dependents of the juvenile court.

stated: Pedro "is a current abuser of amphetamine and methamphetamine which renders the Legal Guardian unable to provide regular care of the child. The Legal Guardian had positive toxicology screens for amphetamine and methamphetamine on 09/04/2018 and 08/21/2018, while the child was in the Legal Guardian's care and supervision. The child is of such a young age as to require constant care and supervision and the Legal Guardian's substance abuse interferes with providing regular care of the child. The Legal Guardian's substance abuse endangers the child's physical health and safety, creates a detrimental home environment and places the child at risk of serious physical harm, damage and danger."

### 2. DCFS Reports

In its detention report, DCFS reported that Pedro tested positive for methamphetamine and amphetamine on August 21, 2018 and September 4, 2018. Pedro did not appear for a test scheduled for August 20, 2018, the day before his first positive test. When asked about his drug use, Pedro denied using illegal substances. A social worker was concerned that Pedro did not provide a telephone number to the foster parents of L.'s sister. Additionally, the social worker observed Pedro and L.'s mother (Pedro's sister) were arguing. The social worker stated when she visited L.'s mother, Pedro was at the home; Pedro mumbled, used profanity, and appeared to be under the influence. The social worker did not identify the substance she believed Pedro used or the reasons why she concluded that he was under the influence.

On September 25, 2018, Pedro tested negative for controlled substances including methamphetamine. On October 22, 2018, Pedro tested negative for controlled substances including methamphetamine. Pedro obtained these tests on his

own initiative. On November 1, 2018, Pedro tested negative for controlled substances including methamphetamine.

A medical examination of L. revealed that she suffered from developmental delays.

### 3.    Jurisdiction Hearing

Social worker Evelyn Aguirre testified that Pedro tested positive for methamphetamine twice—in August and September 2018. She testified that Pedro did not admit to using methamphetamine. According to Aguirre, the Department recommended that L. be placed with foster parents. Aguirre was concerned that Pedro's "methamphetamine use hinders his ability to provide her [L.] with the constant care and supervision she needs." Aguirre acknowledged that the positive toxicology test results in August and September 2018 did not elucidate whether or not Pedro was impaired as a result of his methamphetamine use.

Dr. Rody Predescu, a toxicologist, testified that Pedro's September 4, 2018 and August 21, 2018 blood tests indicated that Pedro used methamphetamine within three to five days of those tests. According to Predescu, the drug tests did not show whether Pedro was impaired as a result of his methamphetamine use. Dr. Predescu concluded, and it was undisputed, that Pedro did not use amphetamine; he tested positive for amphetamine because it was a metabolite of the methamphetamine. A chronic methamphetamine user suffers side effects including sleep deprivation, weight loss, and an inability to function normally. Pedro was obese.

Pedro and L. lived with C.B. for three years. C.B. testified that she never observed Pedro in "a state where he couldn't properly care for" L. C.B. observed that Pedro took good care of

4

L.  Pedro sometimes went out at night, and on those occasions, he would ask C.B. to care for L.  C.B. never observed Pedro to be under the influence of methamphetamine.  C.B. did not notice Pedro staying up at night or being easily angered.  An employee of L.'s school testified that she observed Pedro pick L. up from school every day.  Pedro never appeared to be under the influence of any drugs.

Pedro testified that he was responsible for L. and ensured she attended appointments with her doctor, optometrist, and dentist, including appointments related to L.'s required eye surgery.  Pedro took L. to school every day, and picked her up at the end of the day.  Pedro read to L. and helped her with her homework.  Pedro put L. to bed at night and woke her up in the morning.

At the jurisdictional hearing, Pedro acknowledged that he tested positive twice for methamphetamine and that he lied to the social worker when he denied using methamphetamine.  Pedro testified that he lied because he did not want the social worker to remove L. from his custody.  Pedro testified that he took methamphetamine when he was at a party at a hotel.  Pedro took methamphetamine in December 2017 and February, August, and September 2018.  His only method of using methamphetamine was smoking it.  During cross-examination, Pedro testified that he used methamphetamine at most six or seven times, and DCFS did not contest this number.

On the nights he used methamphetamine, Pedro stayed in a hotel and made arrangements for C.B. to care for L.  Pedro testified that C.B. could contact him if there were an emergency involving L.  Pedro testified that L. never saw him impaired or under the influence of methamphetamine.

Pedro testified that he did not use methamphetamine after September 2018. Pedro testified that he did not crave methamphetamine. He never purchased methamphetamine. According to Pedro, his methamphetamine use did not affect his ability to care for L.

Prior to the jurisdictional hearing, Pedro enrolled in a drug awareness class. Before DCFS enrolled him in random drug testing, Pedro tested on his own for controlled substances. Pedro testified that he was willing to continue to test twice a week for controlled substances after the jurisdictional hearing. Pedro did not believe he had a substance abuse problem. Pedro testified that he weighed 360 or 370 pounds and that his weight had not fluctuated over the course of the year. Pedro was not aware that L. suffered from developmental delays and believed her work was at grade level.

4. **Juvenile Court's Findings**

The juvenile court sustained the allegations in the section 300 petition. The juvenile court pointed out that Pedro used profanity towards a social worker and appeared to the social worker to be under the influence. The juvenile court emphasized that Pedro was dishonest when he told the social worker that he never used methamphetamine. The juvenile court indicated that Pedro was unavailable to L. on the nights he went to a hotel. The court concluded that this evidence was sufficient to sustain the petition under section 300, subdivision (b).[3]

---

[3] At the subsequent dispositional hearing, the juvenile court removed L. from Pedro's care. The court permitted Pedro monitored visits.

## STANDARD OF REVIEW

Pedro challenges the juvenile court's assumption of jurisdiction over L. "When an appellate court reviews the jurisdictional . . . findings of the juvenile court, it looks to see if substantial evidence, whether contradicted or uncontradicted, supports the findings. [Citations.] The appellate court must review the evidence in the light most favorable to the trial court's order, drawing every reasonable inference and resolving all conflicts in favor of the prevailing party. [Citation.] Substantial evidence 'means evidence that is "reasonable, credible and of solid value; it must actually be substantial proof of the essentials that the law requires in a particular case." ' " (*In re Alexzander C.* (2017) 18 Cal.App.5th 438, 446.)

## DISCUSSION

Pursuant to section 300, subdivision (b), the juvenile court sustained allegations that Pedro abused amphetamine and methamphetamine which rendered him unable to provide regular care for L. and placed her at risk of serious physical harm. Section 300, subdivision (b)(1) permits a juvenile court to assume dependency jurisdiction when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse."

"Substance abuse for purposes of section 300, subdivision (b), is shown by a diagnosis from a medical professional or by evidence of criteria recognized by the medical

profession as indicative of a substance abuse disorder." (*In re Alexzander C., supra,* 18 Cal.App.5th at p. 447.) "A true finding under this subdivision requires evidence of ' " ' " 'serious physical harm or illness' " ' " ' to the child, or ' " ' "a 'substantial risk' of such harm or illness." ' [Citations.]" ' " (*In re Israel T.* (2018) 30 Cal.App.5th 47, 51.) "Proof of this element ' " 'effectively requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future . . . .' " ' " (*Ibid.*)

Applying these principles to this case, we conclude that the juvenile court erred in assuming jurisdiction over L. for two reasons. No substantial evidence showed that Pedro abused methamphetamine and no substantial evidence showed that L. was at substantial risk of serious physical harm as a result of Pedro's methamphetamine use.

## A. There Was No Substantial Evidence of Substance Abuse

First, the record supports only the conclusion that Pedro used methamphetamine. It does not support the conclusion that he abused it.[4] A substance abuse disorder includes "cravings and urges to use the substance; spending a lot of time getting, using, or recovering from use of the substance; giving up important social, occupational or recreational activities because of substance use; and not managing to do what one should at work, home or

---

[4] Because there was no evidence of substance abuse, the following part of section 300.2 does not apply to this case: "The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child."

8

school because of substance use." (*In re Alexzander C., supra*, 18 Cal.App.5th at p. 447.)

No evidence supported any of these indicia of substance abuse. Pedro used methamphetamine at most seven times between December 2017 and September 2018. It was undisputed that he did not crave it and that he never purchased it. It was undisputed that he dropped L. off and picked her up from school every day, accompanied her to her medical and dental appointments, and never appeared under the influence when he undertook these care-giving tasks. Further, DCFS presented *no* evidence that Pedro gave up social, occupational, or recreational activities because of his use of methamphetamine.

Respondent's contrary argument is not persuasive. Although respondent correctly points out that Pedro initially lied about his use of methamphetamine, he modified his conduct when he realized that he could lose L. Pedro stopped using methamphetamine, arranged for his own drug tests to show that he had stopped using, enrolled in a class concerning controlled substances, and acknowledged his use of methamphetamine at the jurisdictional hearing. Respondent's statement that Pedro did "nothing" to "remediate his abuse" is not supported by the record.

Respondent cites to *In re R.R.* (2010) 187 Cal.App.4th 1264, 1284 to support the conclusion that Pedro abused methamphetamine. *In re R.R.* is distinguishable because in that case the father had an eight year history of methamphetamine use and his methamphetamine use led to his hospitalization. (*Id.* at pp. 1272, 1284.) Father also admitted using cocaine, marijuana, and drinking three beers a day. (*Id.* at p. 1272.) The court concluded this evidence supported the inference that the

9

father abused methamphetamine. There was no similar evidence in this case. In short, although the evidence showed Pedro used methamphetamine, no substantial evidence showed he abused it.

**B.    There Was No Substantial Evidence That L. Was At Risk of Serious Physical Harm Because of Pedro's Methamphetamine Use**

When Pedro left the house to smoke methamphetamine, he placed L. in C.B.'s care. It was undisputed that C.B. was competent to care for L. Except for a handful of occasions when Pedro left L. in C.B.'s care, Pedro regularly cared for L. and they shared a close bond. Pedro ensured that L. attended school, took her to her medical appointments, and helped her with her homework. There was *no* evidence that Pedro ignored his parental responsibilities as a result of his occasional methamphetamine use. There was *no* evidence that Pedro kept methamphetamine in the home he shared with L.

Physical harm is not presumed from a parent or guardian's substance abuse. (*In re Rebecca C.* (2014) 228 Cal.App.4th 720, 728.) Respondent fails to show that substantial evidence supported the allegation that L. was at substantial risk of physical harm. Respondent's claim that Pedro "did not meet his parental role obligations," is unsupported by any evidence. The isolated evidence that a social worker believed Pedro was under the influence of an unidentified substance in L.'s presence does not support jurisdiction. The social worker did not indicate that Pedro was under the influence of methamphetamine. Moreover, the single, isolated incident in which L. was safe in a home with multiple adults fails to demonstrate that L. was at substantial risk of physical abuse. Although respondent correctly points out that Pedro was unaware of L.'s learning or developmental

10

disabilities, this evidence is not tethered to any basis for jurisdiction and, in any event "homework issues do not rise to a level of physical harm."[5] (*In re Rebecca C., supra,* 228 Cal.App.4th at p. 727.) The evidence showed that L. was healthy, well cared for, and always supervised.

In short, Pedro's "use of methamphetamine, without more, cannot" support jurisdiction. (*In re Alexzander C., supra,* 18 Cal.App.5th at p. 451; see also *In re L.W.* (2019) 32 Cal.App.5th 840, 849 ["case law stands for the proposition that drug use or substance abuse, without more, is an insufficient ground to assert jurisdiction in dependency proceedings under section 300"].) Here, there was no evidence of something more. We thus reverse the juvenile court's assumption of jurisdiction over L.

## DISPOSITION

The juvenile court's jurisdictional order is reversed.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.          JOHNSON, J.

---

[5] Respondent points out that on October 31, 2018, Pedro signed a form indicating that he received a "Full Referral Packet." Pedro testified at the subsequent jurisdictional hearing that he was not provided referrals. Respondent fails to demonstrate how this evidence supported either a finding that Pedro abused methamphetamine or that L. was at risk of serious physical harm because of Pedro's substance abuse.

11

Filed 8/12/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re L.C., a Person Coming Under the Juvenile Court Law. | B294490<br>(Los Angeles County<br>Super. Ct. No. 18LJJP00035) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PEDRO C.,<br><br>    Defendant and Appellant. | CERTIFICATION AND ORDER FOR PUBLICATION |

The opinion in the above-entitled matter filed July 26, 2019, was not certified for publication in the Official Reports. After reviewing the request to publish the opinion, appellant's joinder, and respondent's opposition thereto, and for good cause, it appears that the opinion should be published in the Official Reports. It is so ordered.

_____

ROTHSCHILD, P. J.          JOHNSON, J.          BENDIX, J.