Filed 9/16/20  In re J.F. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re J.F., a Person Coming Under the Juvenile Court Law. | B305123 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 20CCJP00285A) |
| Plaintiff and Respondent, | |
| v. | |
| E.J., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, D. Brett Bianco, Judge.  Affirmed.

Valerie N. Lankford, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and David Michael Miller, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Mother E.J. appeals the juvenile court's jurisdictional and dispositional orders for her infant son, J.F., who was less than one month old at the time of his detention. Mother contends substantial evidence does not support the court's jurisdictional findings under Welfare and Institutions Code section 300, subdivision (b),[1] arguing there was no substantial evidence she abused substances, or that her drug use placed J.F. at risk of harm. She also contends the order removing J.F. from her care was not supported by substantial evidence. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

J.F. first came to the attention of the Los Angeles County Department of Children and Family Services (Department) in December 2019, after he and mother tested positive for marijuana at his birth. J.F. had to be hospitalized in the NICU for low birth weight and because he was not eating well. Mother made inconsistent statements about the prenatal care she received, and tried to conceal her history with the Department for an older child (*post*). Mother claimed she stopped using marijuana when she became pregnant with J.F., and claimed her positive test resulted from exposure to secondhand smoke. Hospital staff noted that mother was behaving strangely and did not seem to understand simple concepts. Mother's doctor was concerned about her ability to care for J.F.

While that referral was being investigated, the Department received a new referral (the one leading to J.F.'s detention) on January 10, 2020. Mother had been arrested on January 3, 2020 and was in jail. J.F. was in the care of his alleged father,

---

[1] All further statutory references are to the Welfare and Institutions Code.

Jeremy F.  Father had called 911 after J.F. started foaming at the mouth and turned blue.  Emergency responders noted the room where J.F. was found smelled of marijuana.  Father also appeared to be under the influence of marijuana or other drugs.  J.F. was admitted to the hospital for observation, and it was suspected he had been overfed, vomited, and choked.

The Department obtained a removal order, and J.F. was released from the hospital to the Department on January 14, 2020.

We previously affirmed jurisdictional and dispositional orders for mother's older child, K.D., who came to the attention of the Department when he was several weeks old, after mother (who was then in foster care) went AWOL from her group home, concealed K.D.'s whereabouts from the Department, and engaged in risky behaviors such as drug use, prostitution, and domestic violence.  The Department was unable to locate K.D. until he was 10 months old.  The juvenile court sustained allegations that mother had a history of runaway behavior, had run away with the infant K.D. and engaged in unsafe behaviors, was found in a motel frequented by prostitutes, and her male companion threatened to harm her because she failed to get money from pimping, all of which placed K.D. at risk of serious harm.  (*In re K.D.* (July 31, 2018, B287757) [nonpub. opn.].)

Mother's case plan for K.D. required her to participate in a substance abuse program, drug testing, parenting and anger management classes, and individual counseling.  Between May 2017 and April 2018, she missed all 21 scheduled drug tests.  Mother failed to reunify with K.D., and jurisdiction was terminated in February 2019 with K.D. placed in a legal guardianship.

3

In April 2018, while mother's appeal concerning K.D. was pending, she gave birth to a daughter, S.J., in Nevada. S.J. was detained from mother at birth due to prenatal drug exposure. She was placed in foster care, and mother was not compliant with her case plan. Nevada social services considered placing S.J. with relatives in California. The Department received a referral concerning S.J. in February 2019, based on a domestic violence incident between mother and father. The referral was closed because S.J. was safe in foster care.

Mother also has an extensive criminal history, with arrests for petty theft, loitering with intent to commit prostitution, disorderly conduct, robbery, obstructing a peace officer, and grand theft, among other arrests.

The Department filed a petition with allegations under section 300, subdivisions (a) and (b) against mother and father, based on the choking incident as to father, and mother's substance abuse history and positive drug test at J.F.'s birth. On January 17, 2020, the juvenile court detained J.F. from mother and father.

In its report for the February 27, 2020 jurisdiction and disposition hearing, the Department stated it had been unable to contact mother. She could not be reached at the number she provided to the court and was not living at the address she had provided. Her visitation was sporadic. She showed up for one of her visits with glassy eyes, smelling of marijuana. When the social worker demanded that she drug test, mother said she would have to test later because she had things to do.

The Department investigator was able to interview mother on February 14, 2020, when she came to Department offices for a monitored visit with J.F. Mother was angry and tearful during

the interview, saying she had done nothing wrong and had nothing to do with the choking incident because she was incarcerated when it happened. She still maintained that her positive drug test was from being exposed to secondhand marijuana smoke during pregnancy. Mother was a no-show for a February 13 on-demand drug test.

The juvenile court sustained allegations under section 300, subdivision (b) as to mother, based on mother's and J.F.'s positive drug tests at birth, and mother's history of substance abuse and current abuse of marijuana. Because a DNA test confirmed that Jeremy was not J.F.'s father, he was dismissed from the case, and the allegations against him were stricken.

The court removed J.F. from mother, and ordered her to participate in reunification services. This timely appeal followed.

## DISCUSSION

### 1. Jurisdiction

Mother contends the findings under section 300, subdivision (b) are unsupported, arguing there was no evidence she was a substance abuser or that she placed J.F. at risk of harm, as he was not in her custody when the incident leading to his detention occurred, and J.F. had been released to her care even though they both tested positive at his birth.

Section 300, subdivision (b)(1), authorizes a juvenile court to exercise dependency jurisdiction over a child if the "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child, or . . . by the inability of the parent . . . to provide regular care for the child due to the parent's . . . substance abuse." (*Ibid.*) "The provision of a home environment

5

free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child." (§ 300.2.)

There was substantial evidence mother abused substances, and that J.F. was at risk of harm in her care. (See *In re Cole C.* (2009) 174 Cal.App.4th 900, 916 [discussing substantial evidence standard of review].) Her two younger children, J.F. and S.J., both tested positive for drugs at birth. Mother failed to drug test in her case for K.D. (and in fact appears to have been using drugs during the pendency of that case, given the positive drug test at S.J.'s birth). She failed to participate in her court-ordered programs and services in her cases with K.D. and S.J. J.F. was born with a low birth weight, and it is unclear if mother had received prenatal care. She consistently denied using drugs and provided implausible explanations for the positive drug tests. She has a history of evading the Department, concealing her child K.D. and placing him in risky situations, and never reunified with her children in her other cases. The problems that keep bringing mother's children under the jurisdiction of the court still exist, unabated. The juvenile court "need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child." (*In re R.V.* (2012) 208 Cal.App.4th 837, 843.) Given J.F.'s young age, mother's drug abuse created a substantial risk to his safety. (*In re Drake M.* (2012) 211 Cal.App.4th 754, 767.)

This case is not like mother's cited cases, *In re L.C.* (2019) 38 Cal.App.5th 646, *In re Destiny S.* (2012) 210 Cal.App.4th 999, or *In re Drake M.*, *supra*, where the evidence did not establish the child's parent or guardian abused substances. The children in these cases were older than newborn J.F., and there was scant

evidence that the parents or guardians in those cases were unable to keep their children safe. (*In re L.C.*, at pp. 652-653; *In re Destiny S.*, at p. 1003; *In re Drake M.*, *supra*, 211 Cal.App.4th at p. 764.)

**2. Disposition**

Mother contends the Department did not meet its burden of proof for removal of J.F. by clear and convincing evidence. We are not persuaded.

A child may not be removed from a parent or guardian unless there is clear and convincing evidence of "substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's [or] guardian's . . . physical custody." (§ 361, subd. (c)(1).) A juvenile court's removal order is reviewed under the substantial evidence standard of review. (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193; see also *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011-1012.)

The evidence discussed *ante* amply supports the juvenile court's conclusion that removal was necessary, and that there were no other reasonable means of protecting J.F.

**DISPOSITION**

The orders are affirmed.

GRIMES, J.

WE CONCUR:

BIGELOW, P. J.          STRATTON, J.
