Filed 5/26/21  In re A.N. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re A.N., | B309562 |
| a Person Coming Under the Juvenile Court Law. | (Los Angeles County Super. Ct. No. 20LJJP00536) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | ORDER MODIFYING OPINION; NO CHANGE IN JUDGMENT |
| Plaintiff and Respondent, | |
| v. | |
| K.N., | |
| Defendant and Appellant. | |

THE COURT:

It is ordered that the opinion filed on May 24, 2021, be modified as follows:

On page 1, second line following the caption, the name of the Judge Pro Tempore, "Robin Kessler," is corrected to "Robin R. Kesler."

There is no change in the judgment.

NOT TO BE PUBLISHED

_____

ROTHSCHILD, P. J.          BENDIX, J.          FEDERMAN, J.*

_____

&ast; Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re A.N., <br><br> a Person Coming Under the Juvenile Court Law. | B309562 <br><br> (Los Angeles County Super. Ct. No. 20LJJP00536) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> K.N., <br><br> Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Robin Kessler, Judge Pro Tempore.  Reversed.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

———————————

K.N. (Father) appeals from the juvenile court's assertion of jurisdiction over his then four-year-old daughter, A.N. The juvenile court found that Father's use of marijuana created a substantial risk of serious physical or emotional harm to the child. Father denies that his marijuana use either rises to the level of substance abuse or poses any threat to A.N. We conclude that substantial evidence does not support the juvenile court's jurisdictional findings as to Father and we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Family

A.N. was born in February 2016, and is Father's only child with K.J. (Mother).[1] At the time this case was initiated, Father and Mother were no longer in a relationship, but remained friends and coparents.

A.N. lived with Mother and Mother's son from a previous relationship, K.G.[2] Mother resumed a relationship with K.G.'s father (Stepfather) after he was released from prison in March 2020. Father had sporadic contact with A.N.

---

[1] Father also had eight other children with another woman. Those children are not involved in this case.

[2] K.G. is not a party to this appeal.

2

**B.    Petition for Jurisdiction**

On June 13, 2020, the Department of Child and Family Services (Department) received a report of domestic violence between Mother and Stepfather.  In her first interview with a social worker on June 24, 2020, Mother confirmed ongoing domestic violence committed by Stepfather.  In one particularly volatile incident, Mother reported that Stepfather attempted to strangle her, resulting in scarring on her face and neck.  Following this interview, on August 11, 2020, Stepfather punched Mother in the eye so hard that her eye split open, resulting in permanent vision loss.  At the time, Mother was four months pregnant with Stepfather's child.

A.N. told the social worker that Mother and Stepfather "hit each other a lot."  She even reported that she had sometimes intervened in these fights, saying that "she [A.N.] hits [Stepf]ather . . . when he hits Mother."

When the social worker called Father on July 29, 2020, he stated that he had no concerns about A.N. being in Mother's care and denied that he had ever witnessed anything out of the ordinary at Mother's home.  He agreed to take A.N. into his custody if necessary, but said that he preferred for her to be placed with her maternal grandmother if possible.  He acknowledged that the child had a close bond with her maternal grandmother, and explained that placement with the grandmother would allow the child to remain in her current school.

Father admitted that he smoked marijuana daily to treat chronic back pain, but insisted that he did not smoke marijuana in front of his children.  Father missed one drug test on August 28, 2020.  A subsequent drug test on September 2, 2020,

showed that he tested positive for 820 nanograms per milliliter (ng/ml) of marijuana. The Department attempted to schedule subsequent tests for Father, but Father did not timely respond to these attempts. He did submit to a drug test on December 3, 2020, but the results of his test were not available for the jurisdictional hearing conducted the next day.

A.N. stated she did not know what drugs were and had not seen anyone act differently by falling, tripping, or slurring their words. Neither Mother nor the maternal grandmother had observed Father abuse marijuana.

The Department's records revealed four prior cases regarding Father's other children. In two of the cases, the Department substantiated allegations of domestic abuse between Father and his girlfriend. A third case alleging domestic abuse was closed as inconclusive. In the fourth case, while Father had seven children in his sole care, one of the children climbed out of a window and fell into a swimming pool. Father found the child floating face down in the pool, called 911, and revived the child through CPR. The child was airlifted to a hospital, and "appear[ed] to be okay." The treating doctor expressed no concerns regarding neglect or abuse. Nothing in the record of that incident indicated that Father was under the influence of marijuana at the time. The Department closed the matter without taking any action.

On August 26, 2020, the Department filed a petition pursuant to section 300 of the Welfare and Institutions Code alleging jurisdiction over A.N. and K.G. on five counts. Counts a-1 and b-1 asserted allegations related to Mother and Stepfather's pattern of domestic violence. The remaining three counts alleged that substance abuse by all three parents impaired their ability

4

to provide regular care for the children. As relevant here, count b-4 alleged that Father "is a current abuser of marijuana," and that "[o]n prior occasions [F]ather was under the influence of marijuana while the child was in [his] care and custody."

At the detention hearing, the juvenile court ordered A.N. removed from Mother. A.N. was released to Father, but continued to live with her maternal grandmother.

## C.    Jurisdictional and Dispositional Hearing

On December 4, 2020, the juvenile court held a combined jurisdictional and dispositional hearing on the petition. The hearing was conducted remotely via the WebEx platform. Mother pleaded no contest to count b-1 concerning the incidents of domestic violence between her and Stepfather. All other counts involving Mother were dismissed.

Father contested count b-4. He testified that he could not remember how long he had used marijuana. He was trying to cut down on marijuana use during the pendency of the case by using it only every other day. He denied using marijuana in A.N.'s presence and denied being under the influence while interacting with her. He denied that any of his previous dependency cases arose out of his marijuana use, or that his marijuana use impacted his employment. In particular, he denied using marijuana on the day one of his children fell into the pool. A social worker testified that she had no information indicating that Father's drug use impaired his ability to parent A.N. Father argued that his marijuana use did not rise to the level of substance abuse, and that the Department could not show any nexus between Father's marijuana use and any potential harm to A.N.

5

The juvenile court found that Father's testimony was not credible, and opined that Father appeared to be under the influence during his testimony because he was "sluggish," displayed a "lack of coherency," and was "slurring . . . his words." The court commented that Father did not have a criminal record reflecting any drug charges. Nonetheless, his September drug test result of 820 ng/ml was well above the "screen cut off [of] 50." Although the court expressed serious concerns about Father's marijuana use, it struck the allegation that he was "a current abuser" of marijuana from count b-4, amending the charge to allege that Father "smokes marijuana every day, which renders the father incapable of providing regular care of the child. On prior occasions the father was under the influence of marijuana while the child was in the father's care and custody." The court sustained count b-4 as amended.

The juvenile court released A.N. to Father on the condition that she remain in the care of the maternal grandmother, and that Father continue to drug test for the Department with marijuana levels of no more than 200 ng/ml. The court granted Mother monitored visitation and granted the Department the discretion to liberalize Mother's visitation. Lastly, the court set a review hearing for June 4, 2021.

Father timely appealed.

## DISCUSSION

### A. Appellate Jurisdiction

Father alone appeals the jurisdictional order issued in this case. The failure of both parents to appeal a finding of jurisdiction requires that we ensure appellate review is appropriate.

Dependency jurisdiction under section 300 is over the *child*, not *the parents*, as a result of the harm or risk of harm the child faces. (See, e.g., *Kern County Dept. of Human Services v. Superior Court* (2010) 187 Cal.App.4th 302, 310.) Because the juvenile court assumes jurisdiction over the child, not over the parents, jurisdiction may exist based on the conduct of one parent alone. (See § 302, subd. (a); *In re John S.* (2001) 88 Cal.App.4th 1140, 1143.) "For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1492.)

However, we may exercise our discretion and reach the merits of a single parent's challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal (see, e.g., *In re Alexis E.* (2009) 171 Cal.App.4th 438, 454), (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings (see, e.g., *In re D.C.* (2011) 195 Cal.App.4th 1010, 1015; see also *In re I.A.*, *supra*, 201 Cal.App.4th at p. 1494), or (3) "could have other consequences for [the appellant], beyond jurisdiction." (*In re I.A.*, *supra*, at p. 1493.)

Father asserts that we should exercise our discretion to reach the merits of his appeal because the outcome could be the difference between Father being an "offending" parent versus a "non-offending" parent, which could prejudice him in this matter and in future dependency proceedings. We have exercised our discretion to reach the merits of a single-parent appeal for this reason before, and we do so here. (See, e.g., *In re Quentin H.* (2014) 230 Cal.App.4th 608, 613.)

**B.     Count b-4 is Not Supported by Substantial Evidence**

1.     *Applicable Law and Standard of Review*

Section 300, subdivision (b), allows a child to be adjudged a dependent of the juvenile court when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's . . . substance abuse." (*Id.*, subd. (b)(1); *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1215.)

"[T]here are three elements for jurisdiction under section 300, subdivision (b), namely, (1) neglectful conduct or substance abuse by a parent in one of the specified forms, (2) causation, and (3) serious physical harm to the child, or a substantial risk of such harm." (*In re Rebecca C.* (2014) 228 Cal.App.4th 720, 724-725.)

In deciding whether there is a substantial risk of serious physical harm, courts evaluate the risk that is present at the time of the jurisdictional hearing. (*In re Christopher R., supra*, 225 Cal.App.4th at pp. 1215-1216.)

We review the trial court's jurisdictional findings for substantial evidence. (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1022.) Under this standard, " 'we must uphold the . . . [jurisdictional] findings unless, after reviewing the entire record and resolving all conflicts in favor of the respondent and drawing all reasonable inferences in support of the judgment, we determine there is no substantial evidence to support [them].' " (*Ibid.*) " 'Substantial evidence "means evidence that is 'reasonable, credible and of solid value; it must actually be

8

substantial proof of the essentials that the law requires in a particular case.' " ' [Citation.]" (*In re L.C.* (2019) 38 Cal.App.5th 646, 651.)

   2.   *Discussion*

   Father raises two challenges to the juvenile court's order taking jurisdiction over A.N.  First, he argues the juvenile court's finding that he had a substance abuse problem is not supported by substantial evidence.  Second, he contends the evidence does not show any nexus between his marijuana use and any potential harm to A.N.  We agree with both arguments.

   This court and others in our appellate district have made clear that dependency jurisdiction "must be based on substance *abuse*; mere substance *use* is not sufficient for jurisdiction."  (*In re J.A.* (2020) 47 Cal.App.5th 1036, 1046, citing *In re Drake M.* (2012) 211 Cal.App.4th 754, 764; see also *In re L.C.* (2019) 38 Cal.App.5th 646, 652 [father's sporadic methamphetamine use did not constitute substance abuse].)

   "[T]he law is not in agreement on when substance use reaches the point of substance abuse." (*In re J.A., supra*, 47 Cal.App.5th at p. 1046.)  However, one common thread running through the jurisprudence on substance abuse is the impact of substance use on a parent's ability to fulfill his or her major obligations to self, family, or society.  (*See In re Christopher R., supra*, 225 Cal.App.4th at p. 1218 [mother's recurrent cocaine use while pregnant "resulted in her failure to fulfill a major role obligation"]; *In re Drake M., supra*, 211 Cal.App.4th at p. 766 [substance abuse may be shown through " '[a] maladaptive pattern of substance use leading to clinically significant impairment or distress, as manifested by one (or more) of the following, occurring within a 12-month period: [¶] (1) recurrent

9

substance use resulting in a failure to fulfill major role obligations at work, school, or home (e.g., repeated absences or poor work performance related to substance use; substance-related absences, suspensions, or expulsions from school; neglect of children or household)[; ¶] (2) recurrent substance use in situations in which it is physically hazardous (e.g., driving an automobile or operating a machine when impaired by substance use)[; ¶] (3) recurrent substance-related legal problems (e.g., arrests for substance-related disorderly conduct)[; and ¶] (4) continued substance use despite having persistent or recurrent social or interpersonal problems caused or exacerbated by the effects of the substance' "].)

We note the juvenile court struck the allegation that Father was "a current abuser" of marijuana, replacing it with a finding that he "smokes marijuana every day." To the extent this finding could be interpreted to support a finding of substance abuse, it is not supported by substantial evidence.

Although Father freely admitted that he smoked marijuana daily to cope with chronic back pain, the evidence does not demonstrate that his marijuana use impaired his ability to fulfil major social obligations. Father did not have any drug-related criminal history, and there was no indication in the record that his marijuana use impaired his employment, social relationships, or bodily health. The juvenile court discredited Father's denial of drug use during a prior incident three years ago, in which a child under Father's care nearly drowned in a swimming pool. However, the record from that case contains no evidence to indicate Father was under the influence of substances on the day of the incident, and shows that he responded appropriately to the situation, immediately calling 911 and performing CPR to

10

resuscitate the child. The mere fact that a child left the house and fell into the pool under Father's watch does not in itself prove that Father was under the influence at the time. Thus, there was no evidence to support the juvenile court's finding that "[o]n prior occasions the father was under the influence of marijuana while the child was in the father's care and custody."

During the jurisdictional hearing, Father denied using marijuana while caring for A.N. Mother and the maternal grandmother denied observing Father under the influence of marijuana while interacting with A.N. There was no evidence to indicate that the one drug test result from September 2020 was representative of Father's daily ingestion of marijuana. While the juvenile court observed that Father appeared to be under the influence during his remote appearance at the jurisdictional hearing, the extent of his impairment is difficult to gauge from the record. The sum total of these facts, while raising a serious concern about the extent of Father's use of marijuana, does not amount to substantial evidence of substance abuse. To the contrary, such a conclusion is based on little more than speculation. (See *In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393 ["inferences that are the result of mere speculation or conjecture cannot support a finding" of substantial evidence in favor of dependency jurisdiction], italics omitted.)

The Department argues that Father's failure to regularly drug test prior to the jurisdictional hearing substantially supports the juvenile court's finding of substance abuse. A parent's failure to comply with the Department's requests to drug test may be relevant or substantial evidence in support of a substance abuse finding in certain circumstances. For example, such failure could substantially undermine a parent's denial of

11

drug use. It could also demonstrate a parent's general failure to cooperate with the Department, or to comply with a court order to submit to drug testing. Here, Father never denied regular marijuana use, the Department admits that Father was generally cooperative, and Father was not in violation of any court orders to drug test.[3] In this context, Father's failure to regularly drug test cannot support a finding of substance abuse.

Moreover, there is no substantial evidence to support the juvenile court's finding that Father's use of marijuana posed a serious risk of harm to A.N. Even when there is evidence of parental substance abuse, "it does not always follow that such a finding means that the parent or guardian at issue is unable to provide regular care resulting in a substantial risk of physical harm to the child." (*In re Drake M.*, *supra*, 211 Cal.App.4th at p. 766.) A juvenile court also must find that the parent's substance abuse would cause a substantial risk of physical harm to the child. (*In re Rebecca C.*, *supra*, 228 Cal.App.4th at pp. 724-725.)

The social worker testified that she had no information indicating that Father's drug use impaired his ability to parent A.N. As we have discussed, the record contains no other evidence that Father was impaired while caring for A.N. or his other children. As such, the record does not contain substantial

---

[3] At the jurisdictional hearing, a social worker's testimony indicated that Father had been ordered to drug test around November 23, 2020. Her testimony reflects a misunderstanding of the juvenile court's order, which required only that the Department give Father a referral for low-cost drug testing services, and provide the court with updates on that referral by November 23, 2020.

evidence supporting the conclusion that Father's use of marijuana poses a substantial risk of serious physical harm to A.N.  (See *In re J.A.*, *supra*, 47 Cal.App.5th at p. 1050 [the mother's use of edible marijuana while pregnant was insufficient to trigger dependency jurisdiction where there was no evidence this harmed either of her children or posed a substantial risk of harm]; *In re Rebecca C.*, *supra*, 228 Cal.App.4th at p. 728 [reversing assertion of § 300, subd. (b), jurisdiction for lack of evidence that the mother's mere drug use was causing or created a risk of causing physical harm to the child].)

The Department argues that A.N.'s young age triggers the " 'tender years' presumption," and that Father's current unemployment and daily marijuana use renders him incapable of providing the regular care and supervision that A.N. needs.  (*See In re Christopher R.*, *supra*, 225 Cal.App.4th at p. 1216 ["Exercise of dependency court jurisdiction under [§] 300, [subd.] (b), is proper when a child is 'of such tender years that the absence of adequate supervision and care poses an inherent risk to [his or her] physical health and safety' "].)  This presumption, however, applies where there is substantial evidence of parental substance abuse.  (*Id.* at p. 1220 [to obtain jurisdiction over a child of tender years, "the Department need[ ] only . . . produce sufficient evidence that the [parent] was a substance abuser"]; *In re Drake M.*, *supra*, 211 Cal.App.4th at p. 767 [holding that in cases involving children of " 'tender years,' " a finding of substance abuse "is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm"].)  For the reasons described above, we do not find that the evidence presented in this case substantially supports a

finding of substance abuse and thus the presumption is inapplicable.

## DISPOSITION

The juvenile court's order finding jurisdiction under section 300, subdivision (b)(1), as to Father in count b-4 is reversed.

NOT TO BE PUBLISHED


FEDERMAN, J.*


We concur:



ROTHSCHILD, P. J.



BENDIX, J.


---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


14