Filed 9/23/25  In re I.Z. CA2/5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re I.Z., a Person Coming Under the Juvenile Court Law. | B339381 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.Z.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 24CCJP01080A) |

APPEAL from an order of the Superior Court of Los Angeles County, Jean M. Nelson, Judge.  Affirmed.

Jennifer Peabody and Keilana Truong, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

The juvenile court assumed dependency jurisdiction over (then) four-year-old I.Z. (Minor) after sustaining allegations that Father was a daily abuser of marijuana, previously used and was under the influence of marijuana while caring for Minor, exposed Minor to firearms, and disobeyed law enforcement commands while with Minor—thereby exposing him to potential and actual violence. Father asks us to decide whether substantial evidence supports the trial court's jurisdiction finding.

## I. BACKGROUND

This dependency case originated in early April 2024, after the Los Angeles Department of Children and Family Services (the Department) received a referral reporting Father had been arrested on suspicion of raping a woman.[1] The woman reported she met Father at a taco stand, she smoked fentanyl and Father used cocaine, and Father subsequently raped her in the front seat of his car.

When law enforcement later located Father's car outside the home where he lived with Minor and Minor's mother (Mother), Father walked out of the residence, saw the police, and ran back inside. Father thereafter refused to come outside as directed by law enforcement. At some point, Father took Minor to their neighbor's home (unbeknownst to the officers on scene, apparently) and then returned to the family home and refused to exit for an additional period of time. During that time, Father

---

[1] Before this, in September 2022, Father was arrested after a road rage incident in which he pulled a firearm on someone in another car while Minor was in the back seat. A court issued a protective order protecting Minor from Father. The protective order later expired after Father was released from custody.

ran to a shed at the rear of the property and appeared to hide several items.

Eventually, Father did exit the home and was taken into custody. Law enforcement found items belonging to the woman who accused Father of rape, including drug paraphernalia and her purse.

When interviewed by a social worker, Father denied knowing the woman who accused him of rape, denied using drugs with her, and denied having any sexual contact with her. Father also initially denied having taken any of the woman's belongings. When informed that law enforcement had reported Father was in possession of some of her belongings, Father said he took them accidentally and threw them in the trash. When the social worker stated law enforcement found the items in a shed, Father denied this was true. Father admitted to using marijuana on a daily basis, but he said he did so when he was alone—he claimed he would typically smoke before beginning work for DoorDash at around 5 p.m. Father also admitted to having a criminal history and being on parole at the time of the interview.

When interviewed, Mother said she thought Father was arrested for stealing someone's bag. Mother admitted Father smokes marijuana daily, and she admitted to being aware Father may sometimes be impaired when he picks Minor up from daycare. Mother denied that Father used any other drugs, and said she no longer wants to be in a relationship with him.

The Department filed a three-count dependency petition alleging Minor was at risk of serious physical harm because Father was a current user of cocaine and daily abuser of marijuana and previously cared for Minor while under the influence of marijuana (count 1); Father placed Minor in a

3

detrimental situation by taking Minor to a neighbor's home and leaving him unattended for an unknown period of time (count 2); and Mother created an endangering home environment by allowing Father, who Mother knew had a history of assaultive behavior and who Mother knew abused marijuana daily, to have unlimited access to Minor (count 3).

At an initial hearing, Minor was detained from Father and released to Mother's care. Before the jurisdiction hearing on the dependency petition, a social worker reinterviewed Father and Mother and spoke to Minor and his maternal grandmother.

Father admitted using marijuana, but he asserted he never used it around Minor. He claimed he would use the drug once a week or less, and he said he only used the drug outside of the home (at a park, for instance) and would come home only once the smell and effects had worn off. When Father was able to find work, he would smoke on his breaks and work until the effects wore off. When he kept marijuana at home, he kept it in the garage and put up a gate so Minor could not get to it. Father denied ever using cocaine. When asked about his arrest, Father said he took Minor to the neighbor's home so Minor would not witness him being arrested. Father maintained he did not carry weapons anymore and said he regularly checked in with his parole officer. Just prior to the jurisdiction hearing, Father also said he had been released from custody and all charges related to the alleged rape incident had been dropped.

Mother said the only drug Father uses is marijuana. She claimed he kept the marijuana in a box in the garage, where Minor cannot access it, and he never smokes the drug at home or around Minor. Mother did not know why Father took Minor to a neighbor's home the night he was arrested, but she thought it

4

was most likely to prevent Minor from watching the arrest. She reported Minor witnessed Father being arrested in 2022 and it was traumatizing. Mother said she was the one who dropped Minor off at school and picked him up, and she said Father used her car to drive for DoorDash at night, so Minor did not have a lot of time alone with him. When asked about the risk of harm to Minor, as this was the second referral the family received as a result of Father's alleged criminal actions, Mother said she was frustrated and disappointed; she had hoped Father's incarceration would have prompted him to change. Mother and Minor had moved out of the family home and were living with maternal grandmother.

Minor's maternal grandmother similarly reported Father smokes marijuana but does not do so in Minor's presence. She told the social worker she had no safety concerns with the family.

Minor was also interviewed, but the social worker concluded he did not seem to be able to tell the difference between a truth and a lie. Minor seemed preoccupied by Father's prior arrest. Among other things, he told the social worker he was once in a car with his dad while his dad was driving really fast, his dad took out a gun, the police came and arrested him, the police also put Minor in handcuffs and took him to jail, and Mother later came and took him home. Minor said this time Father took him to another child's house and asked her father to watch Minor because the police were there to talk to him, and then Father was arrested.

The court held a jurisdiction and disposition hearing in July 2024. After hearing argument from the parties, it amended the petition by interlineation and sustained count b-1. As amended, the court found Father was a daily abuser of

marijuana; Minor was in Father's care and supervision on prior occasions when Father was under the influence of marijuana; Father endangered Minor by exposing him to firearms and did not follow law enforcement commands when confronted by the police, further endangering Minor by exposing him to actual and potential violence; Minor was of a young age and required constant care and supervision; and Father's substance abuse interfered with the provision of that care and supervision. The court dismissed counts b-2 and b-3, and struck all allegations against Mother from the petition.

Explaining the reasons for its ruling, the juvenile court said there were "several" issues pertaining to Father that, taken together, showed "Father does not know how to be safe when around his child." The court identified Father's daily use of marijuana when he is about to run errands and driving while under the influence of marijuana, which the court stated was not safe and showed an inability to function without having a substance in one's system. The court also said it was concerned Father had Minor present during two very dangerous situations. First, Minor was in the vehicle with Father during the earlier road rage incident in 2022. Second, Father essentially initiated a stand-off with law enforcement by refusing to exit the home when instructed to do so. Instead, Father apparently went to hide evidence and relocate Minor, actions that law enforcement could have interpreted as necessitating their intervention. The court stated Father's desire to avoid having Minor watch his arrest did not excuse his behavior. Overall, the court was concerned with Father's judgment, pointing to his decisions to pull a firearm during a road rage incident in front of Minor, to not comply with law enforcement commands when Minor was present, to use

6

marijuana daily, and to run errands and care for Minor after using marijuana.

The court removed Minor from Father's care and released Minor to Mother's care. Father was ordered to participate in weekly drug testing, conjoint counseling with Mother (if they decided to reconcile), a fatherhood parenting class, and individual counseling to address the cycle of violence and its harmful impact on children.

## II. DISCUSSION

Substantial evidence supports the trial court's jurisdiction finding. (See generally *In re R.T.* (2017) 3 Cal.5th 622, 633 [in undertaking substantial evidence review, a reviewing court draws "'all reasonable inferences from the evidence to support the findings . . . [and] review[s] the record in the light most favorable to the court's determinations . . . .' [Citations]"].) As we go on to detail, Father's noncompliance with law enforcement orders on the day of his arrest—and his movement with Minor to another house while the officers were on scene—posed a substantial risk of causing serious physical harm to Minor. Especially when combined with Father's daily marijuana use (sometimes before driving) and the sufficient, albeit somewhat unspecific, evidence that Father sometimes picked Minor up from daycare, there was adequate evidence justifying the juvenile court's jurisdiction finding.

The juvenile court appropriately found Father put Minor at risk of harm by initiating what was effectively a standoff with police. When the police told Father to exit the home, he disregarded the instruction and proceeded to move Minor to a neighbor's home and spend time hiding evidence of his

7

interaction with the woman who accused him of rape.  Even if we credit Father's assertion that his concern at the time was ensuring Minor did not witness his arrest (because Minor had been traumatized by witnessing Father's prior arrest), Father did so in a manner that exposed Minor to the possibility of greater and physical harm.  The police could have easily interpreted Father's actions as cause to immediately apprehend him by force, and that would have obviously placed Minor—who Father had with him for at least part of the standoff period—in physical danger.[2]

While this alone would have justified the juvenile court's jurisdictional intervention, the court was also appropriately concerned with Father's substance abuse.  Dependency jurisdiction for substance abuse exists under Welfare and Institutions Code section 300 when there is excessive use of drugs or alcohol and this renders "a parent or guardian unable to provide regular care for a child and either cause[s] the child to suffer serious physical harm or illness or place[s] the child at substantial risk of suffering such harm or illness."  (*In re N.R.* (2023) 15 Cal.5th 520, 531.)  There was substantial evidence to

---

[2]      We reject Father's effort to frame this as an aberrant episode of endangering conduct.  Father had previously risked seriously harming Minor during the road rage incident when he brandished a firearm with Minor in the car with him.  While that incident occurred in 2022, and the incident that led to the initiation of dependency proceedings occurred in 2024, Father was incarcerated for much of that time; the record indicates the incident that led to dependency jurisdiction occurred approximately four months after he resumed living with Mother and Minor.

8

support the juvenile court's finding Father was abusing marijuana. Though statements made in the different interviews were somewhat conflicting, the court was entitled to credit Mother and Father's earlier statements revealing Father smoked marijuana daily. While the reports were consistent that he did so away from the home, and did not leave any marijuana in places Minor might access it, the reports were also consistent that Father smoked marijuana prior to driving on a regular basis. Daily marijuana use and driving under the influence on a regular basis constitute drug abuse, not mere use.

In addition, in an early conversation with the Department, Mother admitted she was aware Father might at times be impaired when he picks Minor up from daycare. While, as Father contends, there is no direct evidence of a specific incident in which he drove Minor while under the influence, Mother's admission establishes Father sometimes picked Minor up from daycare. That, coupled with the evidence that Father used marijuana daily, and regularly used the drug before driving, permitted the juvenile court to draw a reasonable inference that Father drove with Minor in the car while Father was under the influence.[3] And that only amplifies the evidentiary basis justifying the juvenile court's conclusion that Minor was at

---

[3]     While there is contrary evidence in the record, such as Mother's assertion that she was the one who picked Minor up after school, this at most created a conflict in the evidence. We defer to the juvenile court's resolution of such conflicts when undertaking substantial evidence review. (*In re I.J.* (2013) 56 Cal.4th 766, 773; *In re Tania S.* (1992) 5 Cal.App.4th 728, 733-734.)

substantial risk of suffering serious physical harm absent the court's intervention.[4]

---

[4] Father contends this case is like *In re L.C.* (2019) 38 Cal.App.5th 646, where the Court of Appeal reversed a jurisdiction finding based on drug abuse where the legal guardian used methamphetamine six to seven times, stayed in a hotel when he did so, and arranged for an adult the child knew to care for her. (*Id.* at 650.) Unlike *L.C.*, there was evidence here from which the court could conclude Minor was under Father's care while Father was (driving) under the influence.

Father also argues there is no evidence he ignored his parental responsibilities as a result of his marijuana use nor evidence that Minor was actually harmed. Section 300, however, does not limit juvenile court jurisdiction to situations where a child actually suffers harm. (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1216 [a "court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child"]; see also *In re I.J.*, *supra*, 56 Cal.4th at 773.)

DISPOSITION

The juvenile court's order is affirmed.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, J.

We concur:



HOFFSTADT, P. J.



MOOR, J.