Filed 5/23/24  In re B.M. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re B.M.,<br><br>a Person Coming Under the Juvenile Court Law. | B322622 and B331519<br><br>(Los Angeles County<br> Super. Ct. No. 21CCJP03978) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>N.M.,<br><br>    Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Gabriela H. Shapiro, Commissioner.  Affirmed as Modified.

Suzanne M. Nicholson, by appointment of the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Deputy County Counsel, for Plaintiff and Respondent.

N.M. (father) appeals from the jurisdiction and disposition orders of the juvenile court regarding his daughter, B.M. (born Sept. 2013). Father contends: (1) there was insufficient evidence to support the court's finding sustaining the allegation that father's substance abuse raised a substantial risk that B.M. will suffer serious physical harm; and (2) there was insufficient evidence to support the court's finding that removal of B.M. from his custody was necessary to protect her. We conclude there was sufficient evidence to support the court's jurisdiction and disposition orders.

Father separately appeals from the juvenile court's exit order.[1] Father argues: (1) the court abused its discretion in awarding M.C.D. (mother) sole physical custody and (2) the order impermissibly conditions future modification of the order on father's completion of individual counseling with a licensed therapist. We conclude there was no abuse of discretion in awarding mother sole physical custody. However, the court lacked authority to set a condition for modification of the custody order.

Therefore, we affirm the jurisdiction and disposition orders. We also affirm the exit order, as modified.

## DISCUSSION

I.    *Jurisdiction and Disposition Orders*

A.    *Standard of Review and Applicable Law*

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record

_____

[1]    This court, on its own motion, consolidated father's two appeals.

2

in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.]'" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

Substance abuse may serve as a basis for a jurisdictional finding under Welfare and Institutions Code section 300, subdivision (b).[2] Section 300, subdivision (b)(1)(D) authorizes the juvenile court to assert jurisdiction over a child when "the child has suffered serious physical harm or there is a substantial risk that the child will suffer serious physical harm 'by the inability of the parent . . . to provide regular care for the child due to the parent's . . . substance abuse.'" (*In re Rebecca C.* (2014) 228 Cal.App.4th 720, 724.) "In short, there are three elements for jurisdiction under section 300, subdivision (b), namely, (1) neglectful conduct or substance abuse by a parent in one of the specified forms, (2) causation, and (3) serious physical harm to the child, or a substantial risk of such harm." (*Id.* at pp. 724–725.)

"The finding of dependency cannot be based on substance abuse alone; jurisdiction requires a substantial risk of harm to the child arising from the substance abuse." (*In re J.A.* (2020) 47 Cal.App.5th 1036, 1046.) "[D]rug use or substance abuse, without more, is an insufficient ground to assert jurisdiction in dependency proceedings under section 300." (*In re L.W.* (2019) 32 Cal.App.5th 840, 849.) However, "'the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child [citation]. The court may consider past events in deciding whether a child currently needs the court's protection. [Citation.] A parent's "'[p]ast conduct may be probative of current conditions' if there is reason to

---

[2]     All further statutory references are to the Welfare and Institutions Code.

3

believe that the conduct will continue." [Citation.]' [Citation.]" (*In re J.A.*, *supra*, 47 Cal.App.5th at p. 1048.)

A child cannot be removed from the physical custody of his or her parents "unless the juvenile court finds clear and convincing evidence . . . [t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1).) "The court shall make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home" and "shall state the facts on which the decision to remove the minor is based." (§ 361, subd. (e).)

"'A removal order is proper if based on proof of parental inability to provide proper care for the child and proof of a potential detriment to the child if he or she remains with the parent. [Citation.] "The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child." [Citation.] The court may consider a parent's past conduct as well as present circumstances. [Citation.]'" (*In re Alexzander C.* (2017) 18 Cal.App.5th 438, 451.)

### B.    *Jurisdiction Order*

Father disputes there was sufficient evidence to support the juvenile court's finding true the allegations that father suffered from substance abuse, and that abuse created a substantial risk of harm to B.M. Appellate courts have differed in assessing what evidence is required to find substance abuse.

Father maintains this court should use the approach adopted in *In re Drake M.* (2012) 211 Cal.App.4th 754, which requires a medical professional diagnosis or evidence of substance abuse as that term is defined by the Diagnostic and Statistical Manual of Mental Disorders (DSM). (See *id.* at p. 766.)

Our Supreme Court recently settled this issue in *In re N.R.* (2023) 15 Cal.5th 520. The court held that "neither of these showings [a medical professional diagnosis or satisfaction of the DSM criteria for a substance use disorder] is essential." Instead, substance abuse is assigned its ordinary meaning, "essentially, the excessive use of drugs or alcohol." (*Id.* at p. 531.) The court acknowledged "this commonplace understanding of substance abuse may seem broad and potentially capable of inconsistent application if read in isolation." (*Id.* at p. 540.) However, the statute limits dependency jurisdiction based on substance abuse to "when this abuse leads to an 'inability' on the part of a parent or guardian 'to provide regular care for [a] child' . . . that causes the child to suffer, or creates 'a substantial risk that the child will suffer, serious physical harm or illness' [citation]." (*Ibid.*)

The record contains substantial evidence demonstrating father's use of methamphetamine constituted substance abuse. Father asserts he was an occasional user of methamphetamine and that three positive tests are insufficient to show substance abuse. Our Supreme Court did not set any brightline number of positive drug tests that constitute substance abuse, rather it simply held that use of the drug must be *excessive*. (*In re N.R.*, *supra*, 15 Cal.5th at pp. 531, 539–540.) The evidence is sufficient to show father's use of methamphetamine was excessive.

Methamphetamine is "'an inherently dangerous drug known to cause visual and auditory hallucinations, sleep deprivation, intense anger, volatile

mood swings, agitation, paranoia, impulsivity, and depression.'" (*In re Alexzander C., supra,* 18 Cal.App.5th at p. 449, disapproved of on other grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989 and *In re N.R., supra,* 15 Cal.5th 520.) Father tested positive for methamphetamine on May 26, 2022, when he showed up to the hospital disoriented with bleeding and swollen feet, exhibiting paranoid behavior, and experiencing suicidal ideations. Father also tested positive for methamphetamine on two prior occasions in April 2020 and May 2020.

Shortly before the May 26, 2022 positive test, father engaged in a physical altercation with the paternal grandparents at their home on May 24, 2022. Father spoke loudly to the paternal grandparents and slammed his hands on the table. Father pushed the paternal grandmother to the bed and shoved the paternal grandfather to the ground. The paternal grandmother called law enforcement due to father's violent behavior, but he left when they arrived at the home. Law enforcement issued the paternal grandparents a temporary restraining order against father.

Father also exhibited paranoia during this incident. Father wanted to grab the paternal grandmother's phone because he thought she was videotaping him. Father also thought people were going in his room and taking his possessions. Father argues this behavior was due to his reaction to news of a school shooting in Uvalde, Texas. However, the juvenile court could reasonably conclude father's actions resulted from methamphetamine use given his symptoms and the proximity of his positive test.

Father relies on *In re L.C.* (2019) 38 Cal.App.5th 646 to show his positive tests for methamphetamine were insufficient to constitute substance abuse. Father's reliance on *In re L.C.* is misplaced. While the parent in that case used methamphetamine around seven times in about a year, there was

no evidence he exhibited violent or paranoid behavior.  (See *id*. at pp. 652–654.)  The parent also "stopped using methamphetamine, arranged for his own drug tests to show that he had stopped using, enrolled in a class concerning controlled substances, and acknowledged his use of methamphetamine at the jurisdictional hearing." (*Id*. at p. 653.)

In contrast here, father denied his positive tests as "a hoax," never acknowledged using methamphetamine, and was not open to substance abuse treatment.  (*In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge"].)  Father's methamphetamine use led to violent behavior that caused harm to close family members who were primary caretakers for B.M.  Father's aggressive conduct was serious enough to compel the paternal grandmother to contact law enforcement and obtain a temporary restraining order against father.  The negative manifestations of father's drug use were not confined or limited, causing no harm to others.  Accordingly, substantial evidence shows father's use of methamphetamine was excessive and thus constituted substance abuse, placing B.M. at a substantial risk of harm.

### C.    *Disposition Order*

Father contends the juvenile court erred in removing B.M. from father's custody because the record lacks substantial evidence that B.M. would be in substantial danger if returned to father and that no reasonable means existed to protect B.M. without removal.

Substantial evidence supports the juvenile court's removal order.  The same evidence supporting jurisdiction also supports the dispositional order.  As discussed above, father continued to deny any use or knowledge of methamphetamine despite multiple positive drug tests.  Father also denied

or downplayed his physical altercation with the paternal grandparents, who were caretakers for B.M. The record contains evidence that father has a history of violent behavior in the family home and using methamphetamine, an inherently dangerous drug. Thus, the court did not err in finding there was a substantial danger to B.M. if she was returned home and that removing B.M. from father's custody was needed to protect her well-being.

Father argues he could have continued to properly care for B.M. while he worked on the court-ordered case plan, subject to the Los Angeles County Department of Children and Family Services' (DCFS) supervision. However, father's reluctance to address his substance abuse supports the court's finding that there were no reasonable means by which B.M. could be protected without removing her from father's custody.

II.    *Exit Order*

Father contends the juvenile court abused its discretion because awarding sole physical custody to mother was not in B.M.'s best interest.

The juvenile court has authority to issue custody and visitation orders when it terminates jurisdiction over a minor. (§ 362.4, subd. (a).) Such orders are commonly referred to as "exit orders." (*In re Cole Y.* (2015) 233 Cal.App.4th 1444, 1455.) In issuing exit orders, juvenile courts look to the totality of the circumstances to assess what outcome is in the child's best interests. (*In re J.T.* (2014) 228 Cal.App.4th 953, 963–964.) A reviewing court will not overturn an exit order unless it is arbitrary, capricious, or absurd. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)

The juvenile court's exit order was not based on arbitrary or capricious factors. The court found mother had complied with the case plan and provided a safe, appropriate home for B.M. Mother completed drug

8

treatment. The record shows mother was proactive in rescheduling drug tests she missed due to work. Mother maintained her sobriety. Mother expressed she would continue to work on her sobriety and intended to have B.M. move in with her the following year. Mother planned on leaving B.M. with the paternal grandparents for the next school year. Father does not dispute mother's compliance with the case plan.

In contrast, the court indicated father had not addressed all items in his case plan and that there was insufficient information of his compliance. Father had made no substantial progress in the drug abuse treatment program with random testing. Father had only started receiving negative drug tests in May 2023. Before that, father tested positive for marijuana 11 times and for opiates once between March 24, 2023, and May 1, 2023. Father maintains his positive test for opiates was attributable to a recent vaccination. The record contains no medical evidence supporting such a claim. The court could reasonably find father's drug treatment progress was too recent and insufficient given his history.

Father argues that the court crafted the exit order as a way to punish him for failing to comply with the case plan. (See *In re N.M.* (2023) 88 Cal.App.5th 1090, 1095–1096.) We disagree. Given father's history of violent behavior in the family home and substance abuse, the court had a reasonable basis to deny father physical custody when he had not fully complied with his case plan. While it may be true that father enjoyed a strong bond with B.M., it is not sufficient to award father physical custody on that basis alone. On the other hand, mother complied with her case plan and provided a safe, appropriate home for B.M. The court could reasonably conclude that awarding mother sole physical custody was in B.M.'s best interest. Therefore, we conclude there was no abuse of discretion.

9

Lastly, father challenges the exit order on the ground that the court lacked jurisdiction to condition his ability to seek modification of the order on his completion of individual counseling. DCFS does not take a position on this issue. We agree with father.

"[A]n exit order 'shall not be modified in a proceeding or action . . . unless the court finds that there has been a significant change of circumstances since the juvenile court issued the order and modification of the order is in the best interests of the child.' . . . [T]he decision to modify an exit order . . . is[] within the province of the family court, and then only upon a finding of 'significant change of circumstances' and that the modification is in 'the best interests of the child.'" (*In re Cole Y., supra,* 233 Cal.App.4th at p. 1456.)

Here, the juvenile court's custody order provides, in relevant part: "Upon completion of individual counseling with a licensed therapist, father can go to family law court to request changes in the terms of his custody arrangement and visitation privileges as indicated in this order." We agree the court's requirement for father to complete counseling is an impermissible precondition of the family court's modification of the custody and visitation orders. While completing counseling is a significant factor the family court may consider in deciding whether to modify the custody and visitations orders, such decision is within the family court's province.

## DISPOSITION

The jurisdiction and disposition orders are affirmed.  The following language from the exit order shall be deleted: "Upon completion of individual counseling with a licensed therapist."  As modified, the order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, J.

WE CONCUR:


CURREY, P. J.


MORI, J.

11